**ALMACENES FERNANDEZ, S. A., v. GOLODETZ et al.**

**No. 235.**

Circuit Court of Appeals, Second Circuit.

April 10, 1945.

See also 55 F.Supp. 1003.

Lundgren, Bartels & Lincoln, of New York City, for plaintiff-appellant.

H. Russell Winokur, of New York City, for defendants-appellees.

Before EVANS and CHASE, Circuit Judges, and HINCKS, District Judge.

CHASE, Circuit Judge.

This suit was brought in the District Court for the Southern District of New York by a Mexican corporation against the members of a partnership, of whom some were residents of New York, other residents of England and one a resident of Palestine, who were doing business in New York under the firm name and style of M. Golodetz & Company. Also named as defendants were two common carriers—Texas Transport & Terminal Co., Inc., a New York corporation, and Cia Mexicana de Navegacion S. de R. L. y C. V., a Mexican corporation which maintains an office in the City of New York—and Federal Insurance Company, a New Jersey corporation which is in business in New York.

The complaint alleged that the defendants doing business as M. Golodetz & Company sold the plaintiff 1443 drums of caustic soda to be shipped from New York to Vera Cruz, Mexico, at $6.75 per hundred pounds including war risk insurance and consular fees, payment to be made by a letter of credit issued by the Manufacturers Trust Company as agent for the plaintiff against presentation of sight drafts, commercial invoice, ocean bills of lading, certificates of insurance and consular invoices. There followed allegations that Golodetz & Co. delivered to the carriers 1443 drums of soda which were dented, rusted and unfit for shipment and that it induced the carriers to issue bills of lading in which the drums were falsely described as having been received "in apparent good order and condition;" that Golodetz & Co. induced the defendant Federal Insurance Company to issue certificates of insurance in which the damaged condition of the drums was not disclosed but instead they were described as being in accordance with the bills of lading; and that Golodetz & Co. presented to the Manufacturers Trust Company sight drafts and invoices totaling $49,424.86, together with ocean bills of lading, consular invoices and certificates of insurance covering the sale.

The complaint further alleged that all the defendants represented to the bank that the drums were in good and merchantable condition, packed in unrusted and undented drums fit for shipment; that the defendants other than the insurance company knew that these representations were false and upon information and belief that the insurer ought to have known it; that the bank paid the drafts believing that the bills of lading were clean and true; that thereafter 1439 of the drums arrived at Vera Cruz and the plaintiff was induced to receive them and to transport them to Mexico City, being compelled in so doing to pay import duties and other charges in excess of $8000; that after the drums arrived in Mexico City the sellers and carriers again represented to the plaintiff that the drums had been undented and unrusted when shipped from New York; that they knew these representations were false but made them for the purpose of inducing the plaintiff to refrain from enforcing its claim against them and to retain the soda in order to permit the insurer to make a survey for the payment by it of all claims for damages in connection with the sale and shipment; and that the plaintiff relied upon these representations and accordingly retained the soda, permitted the survey of damages, and limited its claim to the insurer.

Finally, the complaint alleged that the misrepresentations and the damaged condition of the drums prevented the plaintiff from selling the 1443 drums of soda to its customer at a profit and compelled it to sell at a loss at public auction the 1439 drums which it had received, and it demanded damages of $45,000 with interest.

A second cause of action for breach of warranty by Golodetz & Co. was alleged, and so was a third cause of action based on the issuance by Federal Insurance Company of certificates of insurance covering the shipment of 1443 drums of caustic soda from New York to Mexico City via Vera Cruz and payable to Golodetz & Co. in case of loss; the endorsement of these certificates in blank by Golodetz & Co. and their delivery to the plaintiff for a valuable consideration; the total loss of four drums of soda and the damaging and partial destruction of the rest through causes covered by the policy; the insurance com-

pany's subsequent disavowal of liability for the plaintiff's loss; and its refusal to pay any part of it.

The defendant Cia Mexicana de Navegacion S. de R. L. y C. V. was not served with process and did not appear. Upon motion the first and second causes of action were dismissed as against Federal Insurance Company, the dismissal of the second being with the plaintiff's consent. Almacenes Fernandez, S. A. v. Golodetz, D. C., 55 F.Supp. 1003.

In its answer to the first cause of action Golodetz & Co. admitted selling the caustic soda to the plaintiff and having the shipment insured, and it "admitted" that the soda was "merchantable and of the kind and quality specified in the contract of sale and that it was packed in drums fit, suitable, and adequate in all respects for shipment to Vera Cruz." Otherwise the allegations of the complaint were denied generally, as were those of the second and third causes of action.

For a separate defense and by way of counterclaim this defendant alleged that the sales contracts contained an arbitration agreement as follows: "Any dispute arising out of this contract is to be settled by arbitration in New York according to the Rules of the American Arbitration Association. The award so rendered is to be final and binding upon both parties." It alleged that it had always been willing to arbitrate any claims arising out of the contracts and was still willing to do so, but that the plaintiff had broken the agreement to arbitrate, had brought this suit and was in default. As a separate defense to the cause of action for breach of warranty this defendant alleged failure of the plaintiff to give notice of the breach within a reasonable time as is required by § 130 of the New York Personal Property Law, Consol.Laws, c. 41. It demanded that the action be stayed; the plaintiff be directed to arbitrate all its claims; and that the complaint be dismissed with costs as to the defendant Golodetz & Co.

The plaintiff admitted its failure to arbitrate its claims against Golodetz & Co. but it denied having any knowledge or information sufficient to form a belief as to whether the sales contracts contained the alleged agreement to arbitrate or whether Golodetz & Co. was then ready or had ever been ready to arbitrate. It also asserted that its claim, being based on fraud, was "not the subject of arbitration under any provision of said contracts."

About six months elapsed after the commencement of this action before Golodetz & Co. moved for an order staying the action and requiring the plaintiff to proceed to arbitrate. During this period Golodetz & Co. caused seven third party defendants to be joined in the action, but the complaint against most of them was dismissed. The motion for the stay was granted and the plaintiff was directed to proceed to arbitration. This appeal is taken from the order granting the motion.

We have set forth the gist of the pleadings in considerable detail because the plaintiff contends that its first cause of action is not within the compass of the agreement to arbitrate since it is based on fraud. Before we discuss that contention it will be helpful to dispose of two other issues raised by the appellant.

The first is that the right to insist upon arbitration was waived by Golodetz & Co. when it answered the complaint with affirmative defenses and a counterclaim and when it invoked the jurisdiction of the district court to bring in third party defendants. It is quite true that parties may waive an agreement to arbitrate. La Nacional Platanera v. North American Fruit & S. S. Corporation, 5 Cir., 84 F.2d 881. And if one party does bring suit and the other party answers the complaint on the merits instead of relying upon the arbitration agreement, their conduct in so doing may amount to a waiver which will bind them both. Galion Iron Works & Mfg. Co. v. J. D. Adams Mfg. Co., 7 Cir., 128 F.2d 411. Likewise, where a defendant answers a complaint and files a counterclaim without giving notice that it relies upon an arbitration agreement until on the eve of trial several months later it moves for a stay of the action, the trial judge has discretion to deny the application of a party thus in default. Radiator Specialty Co. v. Cannon Mills, 4 Cir., 97 F.2d 318, 117 A.L.R. 299. But the appellant is mistaken in its belief that such cases are applicable to the present situation. In Shanferoke Coal & Supply Corporation v. Westchester Service Corporation, 2 Cir., 70 F.2d 297, the defendant answered the complaint by denying some of the allegations and alleging an arbitration agreement by way of additional defense to the action and moved for a stay. We held that the defendant was

628

not in default within the meaning of the proviso in § 3 of the Arbitration Act, 9 U.S.C.A. § 3, though it had not named its arbitrator, its answer and moving affidavits showing a willingness to arbitrate. But for the appellee's delay in moving for a stay, the above case would control decision here. However, delay in moving for an arbitration order will not alone amount to a default within the proviso. In Kulukundis Shipping Co. v. Amtorg Trading Corporation, 2 Cir., 126 F.2d 978, the original answer to the libel denied the execution of the charter party sued on by anyone having authority to bind the libellee. It was about nine months later and about two months before the case was to be reached for trial when the libellee moved to amend its answer to plead as a separate defense that the charter party contained an arbitration clause which the libellant breached by bringing the suit. The motion was denied. On appeal we held that there had been no waiver of the arbitration clause by answering the libel without insisting upon arbitration until the attempted amendment, no "steps of any importance having occurred meanwhile in the suit." In the instant case the answer did show that Golodetz & Co. relied upon the arbitration agreement, and unless its action in bringing in third party defendants amounted to a waiver it did not lose the benefit of that defense. So doing was a procedural step permitted by Rule 14 F.R.C.P., 28 U.S.C.A. following section 723c, to bring in additional parties by leave of the court. Those third party defendants were not parties to the arbitration agreement between the plaintiff and Golodetz & Co., and the latter's assertion of rights against them was apparently an attempt to bring all parties in interest into court where their rights and liabilities could be adjudicated, if necessary, in proceedings following the termination of any stay granted pending arbitration. Such action did not indicate an intention on the part of Golodetz & Co. to abandon its right to insist on arbitration, which it had already alleged as a defense, and so fell short of a waiver of it. Compare, Short v. National Sport Fashions, Inc., 264 App.Div. 284, 35 N.Y.S. 2d 169.

■ The second contention of the appellant is that it was entitled to a jury trial on the issue of whether the alleged arbitration agreement had been made. Had a genuine issue been raised as to that point the appellant could have demanded a jury

trial as of right under § 4 of the Arbitration Act, 9 U.S.C.A. § 4. In its reply to the counterclaim it merely asserted, however, that it lacked sufficient knowledge to determine whether it had made an agreement to arbitrate and it neither admitted nor denied that it had made one. The appellees, on the other hand, supported their application for a stay by showing at least prima facie that all the sales contracts contained the agreement to arbitrate as alleged in their answer; that all three of those contracts had been sent to the plaintiff in Mexico; that two of them had been accepted in writing by the plaintiff and returned to the appellees in New York; and further upon information and belief that the third had also been so accepted and returned but had been misfiled and could not be produced for that reason. The district judge thus had ample ground for being satisfied that neither the making of the arbitration agreement nor the failure to comply therewith was a substantial issue. To make a genuine issue entitling the plaintiff to a trial by jury, an unequivocal denial that the agreement had been made was needed, and some evidence should have been produced to substantiate the denial. See, Radio City Music Hall Corporation v. United States, 2 Cir., 135 F.2d 715.

■ The plaintiff's effort to avoid arbitration on the ground that this suit is not within the scope of the arbitration agreement is also fruitless. There are no allegations in the complaint that the execution of any of the sales contracts by the plaintiff and Golodetz & Co. was tainted by fraud. What is alleged to have been fraudulent is the manner in which the seller broke the contracts by failing to ship merchantable caustic soda in compliance with them; by obtaining payment on false documents fraudulently issued; and by fraudulently inducing the plaintiff to acept the soda when it arrived in Mexico. It is thus clearly shown that the controversy between these parties has arisen out of the manner in which the seller undertook to perform the contracts after they had been made. The plaintiff is not seeking by virtue of what it has alleged is fraudulent in connection with the defendants' performance to rescind the sales contracts, but on the contrary is seeking to enforce them according to their terms. Whether the attempted performance by the seller was in accordance with the contracts is an issue between those parties clearly arising out of the contracts.

The allegations in the complaint that the breach of the contracts included fraudulent representations by the sellers, the carrier and the insurer which induced the plaintiff's agent to pay for the soda in New York and the plaintiff to accept it in Mexico present issues which also have grown out of the manner of performance and which are, therefore, disputes arising out of the contracts which, in so far as they pertain to the buyer and the sellers, are within the agreement to arbitrate, for they are disputes based upon conduct after performance was begun and in connection with such performance. See In re Utility Oil Corporation, 2 Cir., 69 F.2d 524. And this is so whether the sellers did actually fulfill their contractual obligations, or whether they failed to do so, or whether in addition to such failure they and the carrier and the insurer fraudulently concealed such failure and thereby induced the buyer to perform after a breach by the seller.

Nor does the joinder of other parties defendant in a suit wherein it alleges fraud in performance jointly by the sellers and other parties enable the plaintiff to escape from the effect of the agreement it made. The agreement to arbitrate is valid and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. Arbitration Act, § 3. No such grounds have been alleged.

Plaintiff's suit was, therefore, properly stayed until its disputes with the sellers have been resolved by arbitration.

Order affirmed.