**WILKO v. SWAN et al.**

United States District Court
S. D. New York.

May 23, 1952.

Henry E. Mills, Washington, D. C., for plaintiff, by Richard H. Wels, New York City, of counsel.

Chadbourne, Parke, Whiteside, Wolff & Brophy, New York City, for defendants, by Leonard P. Moore, Edwin C. Hoyt, Jr., New York City, of counsel.

Roger S. Foster, Gen. Counsel, Alexander Cohen, Sp. Counsel, George H. Jaffin, Attorney, Washington, D. C. for Securities and Exchange Commission, amicus curiae.

GODDARD, District Judge.

Motion by defendants, Hayden, Stone & Co. to stay the trial of this action pursuant to Title 9 U.S.C.A. § 3, and all further proceedings herein until an arbitration has been had in accordance with the terms of the margin agreements entered into between plaintiff and defendants. Defendants, Hayden, Stone & Co. have not yet answered the complaint. The Securities and Exchange Commission has filed a brief amicus curiae opposing the stay of proceedings pending arbitration.

The suit is under the Securities Act of May 27, 1933 as amended, 15 U.S.C.A. § 77a et seq., and seeks to recover damages in the amount of $3,888.88.

The plaintiff alleges that on or about January 17, 1951, defendants sold to the plaintiff 1600 shares of the common stock of Air Associates, Inc., a New Jersey corporation, and that plaintiff paid $29,517.54 therefor; that "Said sale of securities by the defendants to the plaintiff was made by the use of the means and instrumentalities of transportation and communication in interstate commerce, to wit: the facilities of the New York Curb Exchange, a registered national securities exchange, the telephone and telegraph lines of the New York Telephone Company and the Western Union Company, and by the use of the United States mails, and said sale was made by means of communications by the defendants to the plaintiff which were and, which included untrue statements of material facts and omitted to state material facts necessary in order to make the statements made in the light of the circumstances under which they were made, not misleading." Plaintiff charges that defendants represented to the plaintiff that Air Associates, Inc. had concluded a merger with the Borg Warner Corporation which would increase the value of the stock and that banks and large financial interests were buying the stock as a result. Plaintiff asserts that these representations were in fact untrue and plaintiff did not know them to be untrue at the time of his purchase. He also charges that the defendant Haven B. Page, a director, counsel and owner of record of a large block of the stock of Air Associates, Inc. was at that time selling his stock or some of it on the New York Curb Exchange, including some or all of the stock sold to the plaintiff.

 Hayden, Stone & Co. assert that the relationship between plaintiff and defendants Hayden, Stone & Co. was established by, based upon, and controlled by the terms and conditions of Margin Agreements dated May 2, 1950 and January 18, 1951, respectively, duly executed by the plaintiff.

The Margin Agreements, in small-type printed form, contain 16 separate paragraphs, and provide in part:

[Introductory clause]

"In consideration of your opening now or in the future or continuing an account or accounts in my name or for me for the purchase or sale of property, I agree with you and your successors as follows, all my relations and dealings with you being subject to this agreement."

[Paragraph 2]

"All transactions made by you or your agents for me are to be subject to the constitutions, rules, customs and practices of the exchanges or markets where executed and of their respective clearing houses and shall be subject to the provisions of the Securities Exchange Act of 1934 [15 U.S.C.A. § 78a et seq.] * * *."

[Paragraph 8]

"I expressly agree that you shall not be bound by any representation or agreement heretofore or hereafter made by any of your employees or agents which in any way purports to affect or diminish your rights under this agreement and that no representation or advice by you or your employees or agents regarding the purchase or sale by me of any property bought or sold on my order or carried or held in any manner for my account shall be the basis of any liability on your part to me."

[Paragraph 16]

"Any controversy arising between us under this contract shall be determined by arbitration pursuant to the Arbitration Law of the State of New York, and under the rules of either the Arbitration Committee of the Chamber of Commerce of the State of New York, or of the American Arbitration Association, or of the Arbitration Committee of the New York Stock Exchange or such other Exchange as may have jurisdiction over the matter in dispute, as I may elect. Any arbitration hereunder shall be before at least three arbitrators."

The contract for the sale of the stock was a separate agreement.

The Federal Arbitration Statute, Section 3, Title 9 U.S.C.A. § 3 reads:

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, *upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration* under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." [Emphasis added.]

But this action is brought under the Securities Act of 1933, Title 15 U.S.C.A., and Section 77l of that Act provides that:

"Any person who— * * *

"(2) sells a security * * * by means of a prospectus or oral communication, which includes an untrue statement of a material fact * * * and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages * * *."

Section 77n of the Securities Act of 1933 provides:

"Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void."

It would therefore seem that this controversy is not "referable to arbitration".

Section 77l provides a relatively simple court remedy for the aggrieved purchaser. It shifts some of the burden of proof to the seller. The purchaser is also given a choice of forum.

■ It is very clear that the intent of the Congress was to require that the provisions of the Securities Act should be strictly complied with so that the purchaser of securities would be protected as fully as reasonably possible. Although the Congress in 1934 enacted some alleviating amendments in respect to Section 77k, which imposes liabilities for misrepresentation in a registration statement, it made no change in Section 77l.

. As the Securities and Exchange Commission suggests, many purchasers of securities would not hesitate to sign the printed form in small type which includes a provision for arbitration, thereby waiving the remedies provided by the Securities Act, particularly as few purchasers are aware of the provisions of the Securities Act. A collateral agreement of this nature would nullify the Act's basic purposes and allow the purposes of the Congress to be circumvented.

In the Senate Report on the bill it was said: ·

"It is now *imperative* that the Federal Government shall adopt measures looking to the protection of the purchasers of securities in interstate commerce." [Emphasis added.] Sen.

Rept.No.47, 73rd Cong. 1st Sess. (1933) p. 2.

The House Committee Report stated:

"Unless responsibility is to involve merely paper liability it is necessary to throw the burden of disproving responsibility for reprehensible acts of omission or commission on those who purport to issue statements for the public's reliance. The responsibility imposed is no more than nor less than that of a trust. It is a responsibility that no honest banker and no honest business man should seek to avoid or fear. *To impose a lesser responsibility would nullify the purposes of this legislation.*" [Emphasis added.] H.R.Rep.No.85, 73rd Cong. 1st Sess. (1933) pp. 9–10.

In Otis & Co. v. Securities and Exchange Commission, 6 Cir., 106 F.2d 579, at page 583 the court declared:

"This statute should be so construed as to achieve the purpose of its enactment if its language is susceptible of such a construction. The obvious purpose of the Congress in its enactment was protection of the investing public." See also Oklahoma-Texas Trust v. S.E.C., 10 Cir., 100 F.2d 888, 891.

In the light of this background of Congressional purpose, the liabilities provision of Section 77l and the antiwaiver provision of Section 77n were enacted and they must be construed accordingly and may not be disregarded. The serious concern which the Congress had for the protection of the investor is evident. It provided a court remedy for the purchaser, and it was deemed essential that a part of the burden of proof should rest on the seller.

However, the Margin Agreements provide that arbitration should be the mode of settling all future controversies. The purport of the clause is that it should be the sole method of deciding disputes. But Congress has granted the right to a court remedy.

Arbitration clauses are commonly included in the form agreements which the purchaser of securities is required to sign.

The effect of this is to require the purchaser to sign away his rights to a court remedy for violation of the Act which was passed to protect him, as a preliminary to the purchase of stock.

Nor will arbitration necessarily assure the purchaser of the equivalent protection of his rights. In American Almond Products Co. v. Consolidated Pecan Sales Co., Inc., 2 Cir., 144 F.2d 448, 451, 154 A.L.R. 1205, the court declared:

"Arbitration may or may not be a desirable substitute for trials in courts; as to that the parties must decide in each instance. But when they have adopted it, they must be content with its informalities; they may not hedge it about with those procedural limitations which it is precisely its purpose to avoid. They must content themselves with looser approximations to the enforcement of their rights than those that the law accords them, when they resort to its machinery."

It has been said of arbitration:

"The arbitrators are usually laymen, expert in the particular field of the dispute, and intended to hear and decide the dispute in the light of their own experience and knowledge without reference to technical rules of law and procedure." Handbook and Guide to Arbitration under the New York and United States Arbitration Statutes, issued by the Chamber of Commerce of the State of New York (1932), pp. 3–4.

It also says:

"It is quite true that a party to a general arbitration sacrifices the protection of rules of law." [Idem, at p. 6]

But Congress has expressly found that the protection of such rules of law, i. e. the burden of proof on the seller, is vital to the legislation and the remedy.

Admittedly, arbitration is to be encouraged. See Kulukundis Shipping Co. v. Amtorg Trading Corp., 2 Cir., 126 F.2d 978. However, it ought not to prevail where it would clearly defeat the urgent policy considerations as expressed by Con-

gress in the Securities Act. Cf. Kingswood Management Corp. **v.** Salzman, 272 App.Div. 328, at page 330, 70 N.Y.S.2d 692, concerning arbitration and the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq.

The American Almond Products case, supra, involved an ordinary contractual transaction which did not come under the protective wing of a remedial statute of the nature of the Securities Act. That case upheld the principle of arbitration in such ordinary situations but it clearly recognized that arbitration does not guarantee the same protections that a remedy in court provides. In view of the informality of the arbitration proceeding and the restricted court review, see United Fuel Gas Co. v. Columbian Fuel Corp., 4 Cir., 165 F.2d 746; Burchell v. Marsh, 17 How 344, 58 U.S. 344, 15 L.Ed. 96; Title 9 U.S.C.A. §§ 10, 11, there is no certainty that the rights of the purchaser accorded him by Section 77l would be wholly protected in an arbitration proceeding.

Arbitration in a case of this nature would provide another disadvantage from the viewpoint of the purchaser. The defendant, Page, was not a party to the arbitration agreement. As a consequence, the purchaser might well be required to maintain two separate actions to enforce his rights.

Congress in its concern for the investor's protection and the restoration of public confidence in the industry, must have been aware of the lesser bargaining position of the purchaser of securities. By Section 77n barring waiver of rights it plainly meant to prevent an advantage gained from an assertion of a superior bargaining power. The court approval of such a private compact in the form agreement which a purchaser of securities is required to sign would accomplish in the same breath the contravention of both the language and the policy of the Securities Act, for such an arbitration clause would bar the purchaser from a remedy which the Act assures him. Section 77n bars its waiver.

The defendants, Hayden, Stone & Co. point to instances of arbitration allowed under the Fair Labor Standards Act, Title 29 U.S.C.A. §§ 201 et seq., and the Miller Act, Title 40 U.S.C.A. §§ 270a–270d, citing Agostini Bros. Bldg. Corp. v. United States, 4 Cir., 142 F.2d 854, under the Miller Act; and Watkins v. Hudson Coal Co., 3 Cir., 151 F.2d 311, and Donahue v. Susquehanna Collieries Co., 3 Cir., 138 F.2d 3, 149 A.L.R. 271, under the Fair Labor Standards Act.

In the Agostini and Watkins cases, supra, the issues were different from the issue at bar, the courts being primarily concerned with the question of the scope of Section 3 of the Federal Arbitration Act in view of the limitations of Section 2 of that Act, 9 U.S.C.A. § 2. The Agostini case, supra, did not concern itself with any possible conflict with the Miller Act. The Donahue case, supra, did find that arbitration was not inconsistent with the Fair Labor Standards Act. But that Act did not contain the particular provisions noted in the Securities Act which would be rendered nugatory by arbitration. Newburger v. Lubell, 257 N.Y. 213, 177 N.E. 424, cited by defendants in support of their contention, was decided in 1931 prior to the enactment of the Federal Securities Act of 1933.

Parry v. Bache, 5 Cir., 125 F.2d 493, allowed arbitration in a question involving an accounting with reference to the purchase of securities. That case was not brought under any particular provision of the Securities Act, nor did it consider the problem presented here.

For the reasons noted above, I do not feel that arbitration of the issues at bar is consistent with the policy and language as expressed by Congress in the Securities Act. The motion for a stay of suit pending arbitration must be denied.

Settle order on notice.