**WILKO v. SWAN et al.**

**No. 96, Docket 22441.**

United States Court of Appeals Second Circuit.

Argued Dec. 2, 1952.

Decided Jan. 15, 1953.

Chadbourne, Parke, Whiteside, Wolff & Brophy, New York City, for appellants; Leonard P. Moore and Edwin C. Hoyt, Jr., New York City, of counsel.

Henry E. Mills, New York City, for appellee.

Roger S. Foster, Gen. Counsel, Alexander Cohen, Sp. Counsel, and George H. Jaffin, Washington, D. C., for Securities and Exchange Commission, amicus curiae.

Before SWAN, Chief Judge, and CHASE and CLARK, Circuit Judges.

SWAN, Chief Judge.

This is an action brought under section 12 (2) of the Securities Act, 15 U.S.C.A. § 77*l*(2), which declares the seller liable to the purchaser of a security sold by means of a prospectus or oral communication which falsely states a material fact or omits a material fact necessary to make the seller's statements not misleading, and puts on the seller the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission.[1] The complaint alleges, in summary, that in January 1951 the brokerage firm of Hayden, Stone & Co., and Haven B. Page, a director and counsel of Air Associates, Inc., sold plaintiff 1600 shares of common stock of Air Associates, for $29,517.54, which he paid to Hayden, Stone & Co.; that the sale was effected by misrepresentation of material facts and omission to state material facts necessary to make the defendants' statements not misleading; and that two weeks after his purchase the plaintiff sold the stock on the New York Curb Exchange at a loss of $3,888.88, for which sum he demands judgment. Before answering the complaint, Hayden, Stone & Co. moved, pursuant to section 3 of the Federal Arbitration Act, 9 U.S.C.A. § 3,[2] for an order staying all proceedings in the action until an arbitration has been had in accordance with the terms of a margin agreement entered into between the plaintiff and the firm of Hayden, Stone & Co. In a carefully reasoned opinion reported in 107 F. Supp. 75, Judge Goddard denied the motion. Hayden, Stone & Co. have appealed.

Although the order is interlocutory, it is appealable, since it is in effect an order denying an interlocutory injunction. Shanferoke Coal & Supply Corp. of Del. v. Westchester Co., 293 U.S. 449, 55 S.Ct. 95, 79 L.Ed. 647. The appeal presents an interesting question of statutory construction said to be of first impression.[3] That question is whether the policy evidenced by the Federal Arbitration Act, 9 U.S.C.A. § 1 et seq., to permit controversies to be settled by arbitration, when the parties have so agreed, is overridden by the policy evidenced by the Securities Act of 1933, 15 U.S.C.A. § 77a et seq., to protect purchasers of securities, if the purchase was induced by untrue or misleading statements of material facts. The appellee has filed no brief, relying apparently on the brief of the Se-

1. Section 12(2), 15 U.S.C.A. § 77*l*(2):
   "Any person who * * * (2) sells a security * * * by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security."
   Section 14, 15 U.S.C.A. § 77n:
   "Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void."
   Section 22, 15 U.S.C.A. § 77v:
   "The district courts of the United States * * * shall have jurisdiction * * * concurrent with State and Territorial courts, of all suits in equity and actions at law brought to enforce any liability or duty created by this subchapter. * * *"

2. 9 U.S.C.A. § 3:
   "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

3. Loss, Securities Regulation, p. 1076.

curities and Exchange Commission, as *amicus curiae,* which makes a strong presentation of the argument in support of Judge Goddard's decision.

■ The motion for a stay was heard upon the movant's affidavit and the margin agreements attached thereto.[4] The plaintiff filed no affidavit in opposition. Consequently we must assume that the plaintiff voluntarily entered into the agreement and fully understood its terms. The *amicus* notes that the elaborate margin agreement, containing 17 paragraphs, was printed in fine type on a single page approximately 8½ by 11 inches, and suggests, in a footnote to its brief, that a claim to avoid the arbitration for fraud might be based on the relationship between the execution of the margin agreement and the alleged fraudulent sale of securities to plaintiff, but says that the court's decision made it unnecessary to consider such questions. In the absence of any opposing affidavit by the plaintiff charging fraud or coercion in procuring his

signature to the agreement, we think that no such question could be raised.

■ The provision for arbitration reads as follows:

"Any controversy arising between us under this contract shall be determined by arbitration pursuant to the Arbitration Law of the State of New York, and under the rules of either the Arbitration Committee of the Chamber of Commerce of the State of New York, or of the American Arbitration Association, or of the Arbitration Committee of the New York Stock Exchange or such other Exchange as may have jurisdiction over the matter in dispute, as I may elect. Any arbitration hereunder shall be before at least three arbitrators."

Other provisions deemed material to the question before us are printed in the margin.[5] The paragraph numbered 9, which purports to exempt the brokerage firm from liability based on any representation or ad-

---

4. The agreements, one dated May 2, 1950, the other dated January 18, 1951, are identical in form. As the brief of the *amicus* states, it is immaterial to the question presented by the appeal on which date the agreement was entered into, but we agreed that the 1951 agreement was the one signed in connection with the transaction here involved.

5. The agreement is in the form of a letter signed by the customer and accepted by the broker. For convenience of reference we have supplied numbers to the successive paragraphs. Those deemed relevant are the following:

"[1] Dear Sirs: In consideration of your opening now or in the future or continuing an account or accounts in my name or for me for the purchase or sale of property, I agree with you and your successors as follows, all my relations and dealings with you being subject to this agreement:

 * * * * *

"[3] All transactions made by you or your agents for me are to be subject to the constitutions, rules, customs and practices of the exchanges or markets where executed and of their respective clearing houses and shall be subject to the provisions of the Securities Exchange Act of 1934 and present and future acts

amendatory thereof or supplemental thereto, and to the rules and regulations of the Federal Securities and Exchange Commission and of the Federal Reserve Board insofar as they may be applicable,

 * * *

 * * * * *

"[9] I expressly agree that you shall not be bound by any representation or agreement heretofore or hereafter made by any of your employees or agents which in any way purports to affect or diminish your rights under this agreement and that no representation or advice by you or your employees or agents regarding the purchase or sale by me of any property bought or sold on my order or carried or held in any manner for my account shall be the basis of any liability on your part to me.

"[10] Whenever any statute shall be enacted, or any regulation made under any statute or by the New York Stock Exchange, which shall be applicable to and affect in any manner or be inconsistent with any of the provisions hereof, the provisions of this agreement so affected shall be deemed modified or superseded, as the case may be, by such statute or regulation and all other provisions of this agreement and the provisions as so modified shall in all respects continue and be in full force and effect."

vice by it or its agents, is concededly made invalid by section 14 of the Securities Act, if construed as a waiver of the statutory liability imposed by section 12(2) of the Act. But the invalidity of this one provision does not vitiate the entire agreement; this contingency was expressly provided for by the severability provision of paragraph 10. Cf. Watkins v. Hudson Coal Co., 3 Cir., 151 F.2d 311, 320, certiorari denied 327 U.S. 777, 66 S.Ct. 522, 90 L.Ed. 1005, rehearing den. 327 U.S. 816, 66 S.Ct. 701, 90 L.Ed. 1039. And § 14 itself does not purport to strike down the entire agreement containing a forbidden term, but declares void only "Any condition, stipulation, or provision" binding the purchaser to waive compliance with the requirements of the statute.[6] The stipulation to arbitrate is not one waiving compliance with the statute unless the statute be construed to forbid arbitration—a construction believed to be untenable for reasons hereafter stated.

Paragraph 3 of the margin agreement provides that all transactions "shall be subject to the provisions of the Securities Exchange Act of 1934 and present and future acts amendatory thereto [15 U.S.C.A. § 78a et seq.]" It contains no express mention of the Securities Act of 1933. If reference to the 1934 Act were construed as excluding the 1933 Act, it might be argued that the agreement did not provide for arbitration of a controversy as to the liability of Hayden, Stone & Co. under section 12(2) of the 1933 Act. But we do not think the principle of *expressio unius est exclusio alterius* is here applicable. It may well be that the phrase "present * * * acts * * * supplemental" to the 1934 Act should be construed to include the 1933 Act. In any event the sale transaction would necessarily be subject to that Act. Therefore the *amicus* does not regard it as material whether or not the agreement purports to make that statute applicable. We agree, and shall proceed to a consideration of the question decided below, namely, whether the 1933 Act evidences a public policy which forbids referring the controversy to arbitration.

The 1933 Act itself contains no declaration of such policy. "The essential purpose of the statute", as stated in Frost & Co. v. Coeur D'Alene Mines Corp., 312 U.S. 38, 40, 61 S.Ct. 414, 415, 85 L.Ed. 500, "is to protect investors by requiring publication of certain information concerning securities before offered for sale." Pursuant to this purpose section 12(2) does three things: it gives the purchaser a statutory cause of action against the seller if the purchase was induced by the seller's false or misleading statements; it provides that he may sue in any court of competent jurisdiction; and it changes in part the burden of proof, i. e., if the buyer proves that he bought in reliance on a false statement by the seller or one that was misleading because of the omission to state a material fact, the seller must prove that he did not know, and in the exercise of reasonable care could not have known, that his statement was untrue or misleading.

That the suit asserts a statutory cause of action is not alone enough to preclude arbitration of the controversy. This has been held in an action under the Miller Act, 40 U.S.C.A. § 270a et seq., Agostini Bros. Bldg. Corp. v. United States, 4 Cir., 142 F.2d 854; and in actions under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., Watkins v. Hudson Coal Co., 3 Cir., 151 F.2d 311; Donahue v. Susquehanna Collieries Co., 3 Cir., 138 F.2d 3, 149 A.L.R. 271. Indeed, in the case at bar the *amicus* does not argue that a controversy as to liability under the Securities Act of 1933 may never be settled by arbitration. Its brief states "We express no opinion on the enforceability of an arbitration contract entered into after a section 12(2) cause of action has been asserted." But if the parties may agree to arbitrate after the action has been brought, we can conceive of no sound reason why they may not agree in advance, provided no fraud or coercion was practised upon the buyer in securing his consent to the arbitration agreement.

6. See 15 U.S.C.A. § 77n, supra, note 1.

Nor is there, in our opinion, any implication against settlement of the dispute by arbitration found in the provision that the buyer may sue in any court of competent jurisdiction.[7] It is true, the statute gives the defrauded purchaser an election to sue either in a federal court or a state court, but certainly this is not a direction that he *must* sue to enforce the right created by section 12(2). It can hardly be doubted that he could voluntarily settle his claim without bringing suit. If so, why may he not agree to settle it by arbitration? If section 14 does not forbid a voluntary settlement without suit, we do not see why it should be construed to forbid a settlement by arbitration. A stipulation to arbitrate cannot be a "provision binding any person acquiring any security to waive compliance with any provision of this title," unless the purchaser is obligated to sue. As above indicated,[8] we are convinced that the purchaser is not so obligated. There is good reason why he may prefer to seek enforcement of his statutory right to damages through the speedy remedy of arbitration rather than by the long delayed remedy of trial in the courts. Particularly is this true in the City of New York where calendar congestion both in the state courts and the federal court is notorious and results in excessive delay. As was said in Murray Oil Products Co. v. Mitsui & Co., 2 Cir., 146 F.2d 381, 383, "Arbitration is merely a form of trial, to be adopted in the action itself, in place of the trial at common law * * *." The Miller Act, 40 U.S.C.A § 270b(b), and the Fair Labor Standards Act, 29 U.S.C.A. § 216, likewise provided where suit might be brought; hence the above cited decisions under those statutes are apposite here. We think that the remedy a statute provides for violation of the statutory right it cre-

ates may be sought not only in any "court of competent jurisdiction" but also in any other competent tribunal, such as arbitration, unless the right itself is of a character inappropriate for enforcement by arbitration, as for example, it was held to be in Kingswood Management Corp. v. Salzman, 272 App.Div. 328, 70 N.Y.S.2d 692.

The burden of proof provision, which the *amicus* deftly characterizes as converting the principle of *caveat emptor* into *caveat venditor*, supplies the best basis for argument against recognizing an agreement to arbitrate in an action of this nature. It is urged that arbitration cannot give the same assurance as a trial in court that the arbitrators will apply the proper legal standards, including the provisions of section 12(2) as to the shift in the burden of proof and the legal measure of damages, and the requirement of section 14 that the exculpatory provision of the margin agreement be disregarded. The exculpatory provision, as already noted, is concededly invalid. Hence no question as to it will be submitted to the arbitrators. With respect to the legal measure of damages and the burden of proof provisions, while it may be true that arbitrators do not ordinarily consider themselves bound to decide strictly according to legal rules, there can be no doubt that they are so bound if the arbitration agreement so provides.[9] Undoubtedly it is true in this country, as said in American Almond Prod. Co. v. Consolidated Pecan Sales Co., 2 Cir., 144 F.2d 448, 451, 154 A.L.R. 1205, when parties have adopted arbitration, ordinarily "They must content themselves with looser approximations to the enforcement of their rights than those that the law accords them, when they resort to its machinery." But as previously noted, the agreement in the case at bar is

7. What are courts of "competent jurisdiction" is provided in section 22(a), 15 U.S.C.A. § 77v, supra, note 1.

8. It is far from clear that the words "waive compliance with" refer to anything more than the mandatory or prohibitive provisions of the Act. The means of enforcement provisions, on the other hand, seem clearly permissive, not requiring compliance.

9. In England, even without such an express provision in the arbitration agreement, the arbitrators must decide "according to the legal rights of the parties." Jager v. Tolme, [1916] 1 K.B. 939, 953; Czarnikow v. Roth, Schmidt & Co., [1922] 2 K.B. 478, 484; Stotesbury v. Turner, [1943] K.B. 370.

"subject to" the 1933 Act; consequently the arbitrators are bound to decide in accordance with the provisions of section 12(2). Failure to do so would, in our opinion, constitute grounds for vacating the award pursuant to section 10 of the Federal Arbitration Act, 9 U.S.C.A. § 10. Cf. Evans v. Hudson Coal Co., 3 Cir., 165 F.2d 970, 974.

The Arbitration Act evidences a congressional policy to favor arbitration. As was stated in Kulukundis Shipping Co. v. Amtorg Trading Corp., 2 Cir., 126 F.2d 978, 985, "The purpose of that Act was deliberately to alter the judicial atmosphere previously existing", and "In the light of the clear intention of Congress, it is our obligation to shake off the old judicial hostility to arbitration." The purpose of the Securities Act of 1933 is to protect investors. Although the question is not free from doubt and Judge Goddard's opinion presents a strong argument against the conclusion we have reached, we do not find in the purpose or in the language of the statute, any policy argument strong enough to override the policy of the Arbitration Act. If Congress had intended to forbid arbitration in a suit based on section 12(2), we believe it would have expressed such intent.

It is further urged that arbitration will be disadvantageous to the plaintiff in this case because defendant Haven B. Page is not a party to the arbitration agreement. We think that fact irrelevant to the question before us. The agreement was between plaintiff and Hayden, Stone & Co.; that is the agreement that will be enforced. Plaintiff has not been deprived of whatever remedies the Act affords him against Page; nor can the absence of Page from the agreement likewise enable plaintiff to escape his contract to arbitrate. Cf. Almacenes Fernandez, S. A. v. Golodetz, 2 Cir., 148 F.2d 625, 629, 161 A.L.R. 1420.

Order reversed and cause remanded.

CLARK, Circuit Judge (dissenting):

Judge Goddard's incisively reasoned opinion, D.C.S.D.N.Y., 107 F.Supp. 75, and the able supporting arguments of the Securities and Exchange Commission are to me very convincing. Commercial arbitration has been highly successful in bringing a businessman's adjudication to business questions. But it would be vastly unfortunate if it became usable as a device to blunt or break social legislation. Here the intent of the contracting party having the superior bargaining power is not concealed. The seventeen finely printed paragraphs of obligation and waiver, covering six pages of the printed record, imposed by this brokerage firm upon customers are designed to secure just as much exculpation as can be devised, contrary to the spirit and the letter of the Securities Act of 1933. The court's opinion herewith declares at least one of the paragraphs illegal. More extensive examination may well bring others into doubt. As the apex to this series of burdens placed upon the investor there appears the arbitration requirement in issue. This is rather naturally and obviously intended to secure an expert or business judgment. But here the persons to give such judgment would naturally come from the regulated business itself. Adjudication by such arbitrators may, indeed, provide a business solution of the problem if that is the real desire; but it is surely not a way of assuring the customer that objective and sympathetic consideration of his claim which is envisaged by the Securities Act.

To uphold the provision for arbitration, it must be held, as it is here, that the investor, at the initiation of his dealings with the broker, may relinquish certain important rights accorded him by the Securities Act. Of these, the most vital appears to be that of the burden of proof placed upon the broker to establish lack of knowledge and inability upon the exercise of reasonable care to know of an untruth or omission in statement in the sale of securities—thus changing the rule of *caveat emptor* to that of *caveat venditor*, as the S. E. C. happily phrases it. The suggestion that perhaps the business arbitrators will be able or inclined to manipulate the burden of proof like lawyers and judges seems to me completely unreal. After all, the great purpose of arbitration is to get away from ordinary legal restrictions as to evidence and proof, and substitute the informed knowledge of the tribunal for the imperfect knowledge

of technical matters acquired through ordinary court processes. But the role of the burden-of-proof concept is to canalize and control the evidence; it may often be the decisive factor in the case. Since the very purpose of arbitration is to be rid of fancy legalisms, the chief reason for arbitration is gone if the arbitrators are to act only like lawyers and judges. Actually the suggestion cannot be carried out in any real sense; the arbitrators will act according to their business background and there will be no way—unless they volunteer foolish explanations in their decision—of checking what they do. So what is most desirable in the ordinary arbitration becomes a clear loss of statutory right here.

Another valuable right here perforce foregone is that of suit in any available court, state or federal, at the choice of the customer. This is indeed an actual means by which the investor can avoid congestion in the courts, since it is well known that calendar congestion occurs in those courts of general jurisdiction where personal injury cases abound. So the Act permits him to select a court to avoid this congestion. The suggestion in the opinion that arbitration may be more speedy I fear promises too much. In the light of the law's confusion, as now construed, it is reasonably obvious that no matter how time consuming may be the arbitration itself, it must necessarily be succeeded by lengthy judicial proceedings before the award is legally enforceable.

It is suggested that had Congress intended to include such arbitration provisions in the extensive waiver clause, § 14, 15 U.S.C.A. § 77n, it would so have specified. But I submit that such a course would have been neither a usual nor a safe and proper method of draftmanship. Here was intended a broad and general prohibition of limiting contracts. Had particular devices of restriction then been individually considered, it would nevertheless have been unwise to single them out for separate reference. For that would have suggested that other unrecalled devices were permissible. The language chosen is broad and general, as befits the intent. It seems to me wholly adequate and effective to safeguard the investor against loss of his right of suit under the Act and the important burden of proof which it grants in his favor.

While I do not think decision on the point now necessary, I do submit with all deference that there is the greatest difference between a binding agreement for compulsory arbitration at the beginning of any transaction and an arbitration mutually acceptable after a breach as a method of settlement of an already existing dispute. The analogy of releases under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., invalid prior to any accident, but valid if fairly and reasonably made in settlement of an existing claim, seems persuasive. See Callen v. Pennsylvania R. Co., 332 U.S. 625, 68 S.Ct. 296, 92 L.Ed. 242; Krenger v. Pennsylvania R. Co., 2 Cir., 174 F.2d 556, certiorari denied Pennsylvania R. Co. v. Krenger, 338 U.S. 866, 70 S.Ct. 140, 94 L.Ed. 531; Boyd v. Grand Trunk Western R. Co., 338 U.S. 263, 70 S.Ct. 26, 94 L.Ed. 55.

Because I believe important rights under this notable first of a series of famous Acts for the benefit of the investing public should not be capable of nullification by long fine-print restrictions of the broker's devising, I think the ruling below wise and beneficent. I would affirm.