**GREATER CONTINENTAL CORPORATION, Plaintiff,**

v.

**Marvin SCHECHTER et al., Defendants.**

**No. 69 Civ. 3761.**

United States District Court
S. D. New York.

Sept. 26, 1969.

---

Kaye, Scholer, Fierman, Hays & Handler, New York City, for plaintiff; Jay G. Strum, Lawrence N. Weiss, New York City, of counsel.

Spencer & Tunstead, New York City, for Marvin Schechter.

## OPINION

FRANKEL, District Judge.

Characterized briefly for the purposes immediately at hand, this is an action to rescind a partially executed contract under which plaintiff acquired from two of the individual defendants, Marvin Schechter and Hugo Spatenga, all of the stock of defendant Sea-Land Dredging Corp. Plaintiff has moved for various kinds of injunctive relief *pendente lite*. As will appear, some of the restraints thus sought are essentially undisputed, if not clearly needed. For the rest, the motion will be denied.[1]

### I.

The agreement plaintiff seeks to rescind was made on April 3, 1969. It pro-

---

1. It was stated on oral argument that defendant Spatenga consents to all the preliminary relief sought against him. The parties, if they so desire, may submit an agreed order, upon notice to the remaining defendants, embodying this stipulation.

vided that plaintiff Greater Continental Corporation ("GCC") would acquire the two-thirds of Sea-Land's stock held by Schechter and the one-third held by Spatenga in exchange, respectively, for 100,000 and 50,000 GCC shares. In addition, to pay off Sea-Land's indebtedness to its two shareholders, plaintiff agreed to pay Schechter $10,000 plus 5333 GCC shares and an amount comparably computed for Spatenga. There were standard provisions for "investment letters" from Schechter and Spatenga, with undertakings by plaintiff to comply with S.E.C. registration requirements at later times when these individuals wished to sell their GCC stock. Schechter's 100,000 shares were to be held in escrow for two years, and they are so held, by an agent who is counsel for plaintiff.

The stock-purchase agreement went on in familiar and lengthy detail for 25 legal-sized pages, followed by a number of pages of exhibits, covering with characteristically exquisite precision the varieties of large and small things likely to be discovered in painstakingly lawyered documents of this kind. To focus upon the items of interest at this juncture, it contained a warranty and representation by Schechter that there had been no materially adverse changes in Sea-Land's condition between December 31 and April 3, 1968, "except for operating losses not in excess of $10,000 in the aggregate." The primary contention of plaintiff in the lawsuit is that this warranty and representation (speaking under the contract as of the closing on April 14, 1969) was false in that there were actually operating losses of over $90,000 during the period described. In addition, plaintiff counts upon two other items of alleged deception:

(1) That Schechter failed to disclose that late in 1968, Sea-Land had become financially unable to obtain bonding necessary in order to secure new contracts in its dredging business.

(2) That Schechter "represented to GCC that he was experienced and

expert in the management of Sea-Land's business and that he had been managing the business" whereas, "upon information and belief [*sic*, this being the only sworn averment on this subject in the moving papers], Schechter was not experienced and expert in the management of Sea-Land's business, and the business had been managed by Spatenga during all or most of the period prior to GCC's agreement to purchase Sea-Land."

Returning briefly to the sales agreement in its possibly material aspects, there was a provision for its interpretation in accordance with New York law. And there was a sweeping and detailed integration provision confining the rights and obligations of the parties to the express terms of their lengthy document:

"(B) This Agreement constitutes the entire agreement between the parties hereto and supersedes all prior agreements and understandings, oral and written, between the parties hereto with respect to the subject matter hereof. No representation, promise, inducement or statement of fact has been made by Greater Continental or the Stockholders which is not embodied in this Agreement or a written statement, certificate, schedule or other document delivered pursuant hereto or making express reference hereto, and neither Greater Continental nor Stockholders shall be bound or liable for any alleged representation, promise, inducement or statement of fact not so set forth."

The quoted language is of some interest, as will become clearer, in light of the facts that:

(1) there was no representation in the contract that Schechter, repeatedly dealt with as an attorney under the terms of the agreement itself, professed special expertise in the dredging business; and

(2) there was no reference to any employment agreement between plaintiff and Schechter.

Nevertheless, as part of the interconnected body of transactions accomplished as of the closing date, April 14, 1969, GCC and Schechter did make a separate employment contract. Under this agreement, Schechter became an employee of GCC, not of Sea-Land, for a two-year period at an annual salary of $25,000. His duties were to be prescribed by plaintiff's board and to include, "but not [be] limited to, management of Sea-Land * * *." He was to devote full time to this employment, but it was agreed that he would for six months be devoting "a portion of his time to the closing out of his existing legal cases." Plaintiff reserved the right to terminate the employment "at any time upon thirty (30) days' prior written notice, but only for cause." By a supplemental letter made part of the employment agreement, it was provided that "any disputes" arising under it would "be settled by arbitration under the rules then prevailing of the American Arbitration Association." This provision is involved in one of the disputed issues now before the court.

The employment agreement contained its own integration clause. It said:

"This instrument contains the entire agreement of the parties. It may not be changed orally but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, extension or discharge is sought."

## II.

At the closing of the stock purchase agreement, Schechter received the 5333 GCC shares promised him as part payment for Sea-Land's indebtedness to him. He did not receive the $10,000 also promised for the remainder of such indebtedness, nor has he ever been paid that money. As has been noted, the 100,000 GCC shares due him under the agreement are in escrow. And he has received no salary under his contract as a GCC employee although he has performed services both for GCC and for Sea-Land in that capacity.

The explanation is clear from the papers. Within days or weeks of the closing, if not sooner, GCC became disenchanted with its deal and began to urge rescission. Schechter resisted. Late last month, he proceeded to seek enforcement of various rights, of which only those directly interesting here need be mentioned. On August 19, 1969, he filed a demand for arbitration under the employment agreement with GCC, seeking his unpaid salary and other claimed benefits. On or about August 28, he sued under the stock sale agreement in the Supreme Court, New York County, seeking the unpaid $10,000, his 100,000 GCC shares, and other relief. At about the same time, GCC brought the instant action, alleging the deceptions summarized earlier and urging these as grounds for rescission under the Securities Exchange Act of 1934, § 10(b), 15 U.S.C. § 78j(b), and S.E.C. Rule 10b–5 thereunder, 17 C.F.R. § 240–10b–5. A day or so later GCC brought another proceeding, this one in the Nassau County Supreme Court, seeking to stay the arbitration Schechter had demanded on the asserted ground that § 29(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78cc(a),[2] under the principles of Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), nullifies the arbitration clause in the separate employment agreement invoked by Schechter.

With the Nassau County proceeding still pending, as it is to this time, plaintiff brought the present motion for a preliminary injunction, again seeking, on the same grounds, to stay the arbitra-

2. "Any condition, stipulation or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void."

tion. In addition, the motion here seeks temporary injunctive relief:

(1) against transfer by Schechter of any GCC stock he has received under the sales agreement;

(2) similarly barring transfer of shares in a company called Paul Samuels Associates, Inc., allegedly received by Schechter as a dividend on his GCC stock; and

(3) enjoining Schechter's further prosecution of his suit in the New York County Supreme Court.

As to the problem of stock transfers, the parties agreed upon oral argument that the equitable resolution would be to maintain the *status quo* by requiring essentially that the shares in question remain where they are. This means that the 100,000 GCC shares in escrow should stay there—a manageable requirement in light of the escrowee's presence as a party. Likewise, Schechter is to refrain from transferring or otherwise affecting the 5333 shares he has received. There is mystery in the papers and in the oral submissions about the Paul Samuel shares, but counsel have expressed confidence that their ingenuity will suffice to word a requirement that the *status quo* remain undisturbed in this respect too.

Unlike the readily agreed disposition of the motion as it concerns the foregoing stocks, the remaining prayers for restraints—against the arbitration and the New York County lawsuit—have been sharply contested. These aspects of the motion will be denied for reasons hereinafter developed.

### III.

■ Insofar as plaintiff's likelihood of success has any bearing upon the attempt to enjoin the state action, see Progress Development Corp. v. Mitchell, 182 F.Supp. 681, 711 (N.D.Ill.1960), modified on other grounds, 286 F.2d 222 (7th Cir. 1961); Potter v. Carvel Stores of New York, Inc., 203 F.Supp. 462, 466 (D.Md.1962), aff'd, 314 F.2d 45 (4th Cir. 1963); Texaco, Inc. v. Fiumara, 248 F.

Supp. 595, 596 (E.D.Pa.1965), this is among the factors uniformly adverse to the motion. The alleged $90,000 loss centers upon an uncertified statement by an accountant retained by GCC who appears to have prepared inconsistent statements for submission to the S.E.C. Even if the inconsistencies are disregarded, the existence of the loss is at best faintly and unpersuasively supported. It has all the earmarks of a retrospective excuse for kicking over a regretted deal rather than a solid case of deception. The claimed failure to disclose the bonding problem is still thinner stuff. GCC, being in the insurance business itself, seems to have understood the situation perfectly and to have known exactly what was needed to supply the requisite bonding capacity. A still longer reach and a still more futile grasp is the "information and belief" about what Schechter was in comparison to what he represented himself to be. From all that appears thus far, GCC's people knew Schechter was a lawyer, knowledgeable in the business aspects of his dredging company but not necessarily in the technical work of dredging. There is no weight in the vague suggestion that he may have given an inflated account of his expertise.

■ But there is no occasion, in any event, to dwell upon the dubious merits of plaintiff's contentions. Quite apart from that, no basis is shown for enjoining Schechter's state action. To be sure, plaintiff's complaint here is framed so as to come under the federal securities laws (even though it looks remarkably like an old-fashioned suit for rescission under familiar common-law principles), and the federal jurisdiction is exclusive for such a suit. 15 U.S.C. § 78aa. It is not now questioned, moreover, that plaintiff's formulation of its claim is a plausible one even though there is no hint by plaintiff as to why it could not obtain identical relief on essentially identical grounds by defending and counterclaiming in the state action. Giving plaintiff the benefit of all the *arguendos*, it does not approach the showing required for

the extraordinary remedy of an injunction against continued prosecution of a state lawsuit.[3] Indeed, plaintiff's thick and otherwise learned papers are remarkable in their failure to cite a single case among the many defining the law on this subject.

■ That ignored law, to recall it briefly, is familiar. Before it might be entitled to an order restraining Schechter's continuation of his state action, plaintiff would have to overcome the formidable barrier of 28 U.S.C. § 2283[4] —which plaintiff neglects even to mention—prohibiting the federal courts from enjoining pending actions in the state courts except in certain specified circumstances. In view of their impact upon the delicate relationship between the federal and the state courts, exceptions to this statute are narrowly construed. Amalgamated Clothing Workers of America v. Richman Bros. Co., 348 U.S. 511, 514, 516, 518, 75 S.Ct. 452, 99 L.Ed. 600 (1955); Toucey v. New York Life Ins. Co., 314 U.S. 118, 62 S.Ct. 139, 86 L. Ed. 100 (1941). And plaintiff comes within none of them.

■ It is not sufficient to show that the matter properly before a state court embraces issues within the compass of the federal suit, even if the federal court has exclusive jurisdiction over its case. Lyons v. Westinghouse Electric Corp., 201 F.2d 510 (2d Cir. 1952), aff'g 109 F.Supp. 925 (S.D.N.Y.), cert. denied, 345 U.S. 923, 73 S.Ct. 781, 97 L.Ed. 1354 (1953); Jos. L. Muscarelle, Inc. v. Central Iron Mfg. Co., 328 F.2d 791, 794 (3rd Cir. 1964); Red Rock Cola Co. v. Red Rock Bottlers, 195 F.2d 406, 409–410 (5th Cir. 1952); Reines Distributors, Inc. v. Admiral Corp., 182 F.Supp. 226, 228–229 (S.D.N.Y.1960); Avon Publishing Co. v. American News Co., 143 F.Supp. 516, 518–520 (S.D.N.Y.1956). In order for an injunction to issue in such cases, there must be a potential conflict of dimensions requiring this strong measure to preserve the integrity of the federal jurisdiction. Capital Service, Inc. v. National Labor Relations Board, 347 U.S. 501, 505–506, 74 S.Ct. 699, 98 L.Ed. 887 (1954); Bowles v. Willingham, 321 U.S. 503, 511–512, 64 S.Ct. 641, 88 L.Ed. 892 (1944); National Labor Relations Board v. Schertzer, 360 F.2d 152, 153 (2d Cir. 1966). No such compelling reason exists here. At least in their present postures, both suits can proceed concurrently without prejudicing the disposition of the federal claim.

### IV.

Plaintiff's theory for enjoining the arbitration proceeding is not more tenable. The basis for this effort is Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L. Ed. 168 (1953), involving a customer's suit against a brokerage firm under § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l(2). Reversing a divided Court of Appeals, see 201 F.2d 439 (2d Cir. 1953), a divided Supreme Court held void a standard provision of the brokerage firm's form margin agreements with its customer. The statutory foundation for this result was § 14 of the 1933 Act, 15 U.S.C. § 77n, declaring that "[a]ny condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void." The Court weighed carefully the well-known arguments favoring arbitration— the supposedly greater speed, economy and informality. See 346 U.S. at 431– 432, 438, 74 S.Ct. at 184–185, 188. It concluded, however, that the Securities Act, designed "to protect the rights of investors," *id.* at 438, 74 S.Ct. at 188; see also 431, 74 S.Ct. at 188, had included among its protections special procedural and substantive advantages available

---

3. Incidentally, plaintiff is in the unappealing position of seeking to enjoin a "duplicative" action in the state court, while bringing tandem suits in the state and federal courts to stay the arbitration.

4. "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or·effectuate its judgments."

with certainty only in the judicial proceedings for which Congress had provided.

It seems safe to accept for present purposes that the principles of Wilko v. Swan apply to analogous cases under the Securities Exchange Act of 1934, § 29(a) of which, 15 U.S.C. § 78cc(a), note 2, *supra,* is virtually the same as § 14 of the 1933 Act. Reader v. Hirsch & Co., 197 F.Supp. 111 (S.D.N.Y.1961); Maheu v. Reynolds & Co., 282 F.Supp. 423 (S.D. N.Y.1967, 1968). It is somewhat more debatable whether a corporation acquiring another in an essentially private transaction is the kind of litigant for which the doctrine of Wilko v. Swan was designed to afford assistance against the impositions "of the contracting party having the superior bargaining power * * *." Wilko v. Swan, *supra,* 201 F. 2d at 445 (Clark, J., dissenting). Resolving this doubt in plaintiff's favor, and assuming an arbitration provision *in the stock purchase agreement* would have been a nullity, the court concludes that there is no tenable ground for a similar result affecting the employment agreement.

The highly sophisticated parties in this case deliberately and carefully made separate and discrete agreements—one arguably subject to the securities laws, the other patently confined to a distinct area. The considerations favoring an arbitration provision are commonly thought to have special weight in cases of employment contracts. In this very case, for example, we have an employee who has given up his law practice in reliance upon an employment agreement mutually regarded as defining his sole and exclusive occupation and his sole source of income from employment. He has, undisputedly, received none of the promised compensation. The situation is one which makes highly intelligible and sensible the agreed provision of a separate, hopefully swift form of remedy.

There is upon analysis no countervailing argument of substance under Wilko v. Swan. Granted the employment agreement was a transaction related to

the stock sale; it was not less distinct for that in any sense pertinent here. The provision for arbitration in the employment agreement is literally and rationally outside the terms of § 29(a) of the 1934 Act; note 2, *supra.* It stretches attempted reasoning by analogy beyond acceptable limits to characterize the arbitration provision here in question as a waiver of anything in the Securities Exchange Act. It is futile to invoke for this subject the entirely inapposite rationale and rule of Wilko v. Swan.

---

To summarize and implement the court's rulings: an order will be settled (1) providing for maintenance of the *status quo* with respect to the GCC and Paul Samuels shares in controversy, following the substantially agreed understanding outlined above, and (2) denying the prayers to enjoin the state action and arbitration proceeding Schechter has instituted.