Lawrence E. CONNELLY, Trustee of the Estate of George C. Lucas, deceased, Ralph Restow and Irma Taylor, Co-Guardians of the Estate of Jessie Albracht, Frank L. Taylor, Trustee of the Trust created by Beatrice B. Fishley, deceased, Ann McConnell, Stephen Ward Balkwill, Plaintiffs,

v.

George W. BALKWILL, Gen Corporation, Pettibone-Mulliken Corporation, Cleveland Frog and Crossing Co., William V. Brooks, Defendants.

Civ. A. in Equity No. 31717.

United States District Court
N. D. Ohio, E. D.

April 8, 1959.

Spieth, Spring & Bell, Cleveland, Ohio, for plaintiffs.

Charles D. Johnson, of Baker, Hostetler & Patterson, Cleveland, Ohio, Cummings & Wyman, Chicago, Ill., for defendants.

McNAMEE, District Judge.

Defendants' motion for summary judgment is based upon the contention that this action is barred upon one or more of the following grounds: (1) the statute of limitations; (2) res judicata; and (3) collateral estoppel.

As indicated by the second and third grounds of the motion, this is the second action growing out of the same transaction. The first action was commenced in the Common Pleas Court of Lake County, Ohio, in November 1950 against the defendants George W. Balkwill and the GEN Corporation and resulted in a judgment for the defendants which upon a trial de novo was affirmed by the Court of Appeals of the 7th Ohio Appellate District. The Supreme Court of Ohio overruled a motion to certify the record. The action in this Court was commenced on April 8, 1955.

On July 20, 1950, and for several years prior thereto, the five plaintiffs, or the persons for whom they are acting in representative capacities, and the defendant George W. Balkwill were the owners of all of the shares of stock of The Cleveland Frog & Crossing Company, an Ohio corporation. At that time there were 5,000 shares outstanding. Plaintiff Connelly, trustee, was the owner of 2,800 shares, plaintiffs Ann McConnell and Stephen Ward Balkwill were the owners of 366⅔ shares and 183⅓ shares, respectively. Plaintiffs Ralph Restow and Irma Taylor, as co-guardians, represent the interest of the estate of Jessie Albracht, who owned 550 shares. Conrad Albracht, trustee, since deceased was the owner of 550 shares. Frank L. Taylor is the successor trustee of the interest formerly held by Conrad Albracht. Defendant George W. Balkwill was the owner of 550 shares.

This action is brought under favor of Section 10 of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j and Rule X 10b–5 of the Securities and Exchange Commission.

The complaint avers that during July 1950 defendants Balkwill, Pettibone-Mulliken and Brooks conspired to violate Sec-

tion 10(b) of the Securities Exchange Act and Rule X10b–5 of the Securities and Exchange Commission by inducing plaintiffs to sell the shares of stock owned by them in The Cleveland Frog & Crossing Company (sometimes hereinafter referred to as the Frog Company) by the use of the mails, telephone and instrumentalities of interstate commerce, and upon false and fraudulent representations; by employing devices, schemes and artifices to defraud; by making untrue statements of material facts and by omitting to state to plaintiffs material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading. The complaint sets forth the various alleged acts of misrepresentation, concealment and non-disclosure which need not be repeated here. It is alleged further that relying upon the statements and conduct of the alleged conspirators plaintiffs entered into an agreement under date of July 20, 1950 to sell their shares to defendant Brooks, who was acting for an undisclosed purchaser, for the sum of $232.14 per share; that defendant Balkwill also agreed to sell his shares; that on July 20th plaintiffs and defendant Balkwill delivered their certificates for the shares and the resignations of the officers and directors of the company, including that of defendant Balkwill, to the Union Bank of Commerce as Escrow Agent; that subsequent to August 1, 1950 plaintiffs received the sale price of $232.14 per share, or a total of $1,033,031. Plaintiffs allege further that in July 1950 defendant Balkwill entered into a secret agreement with Brooks and Pettibone-Mulliken that his shares would not be sold but would be returned to him and that plaintiffs' shares would be purchased and retired as treasury shares of the Frog Company, thus making defendant Balkwill sole owner of the company.

Plaintiffs allege further that Balkwill's shares were returned to him; that plaintiffs' shares were retired as treasury shares of the company and that Balkwill, as the sole stockholder of The Cleveland Frog & Crossing Company, sold and leased certain of its assets to Pettibone-Mulliken and realized a large undisclosed profit. Plaintiffs pray for an accounting and other relief.

In their answers the defendants so charged deny the allegations of fraud, misrepresentation, concealment, non-disclosure of material facts and allegations of conspiracy. The answers of the defendants refer in detail to the findings, conclusions and proceedings in the prior state court action which constitute the bases of the defenses of res judicata and collateral estoppel and also assert that plaintiffs have failed to state a claim upon which relief may be granted. By way of further defense defendants assert that this action is barred by the statute of limitations. Except for the addition of parties defendant, the allegations of conspiracy, allegations relevant to this Court's jurisdiction and the applicability of Section 10(b) and Rule X 10b–5, this action is in all other respects essentially the same as the former action in the state court.

In support of their motion for summary judgment defendants submit a lengthy affidavit of Attorney Charles D. Johnson to which there is annexed numerous and extensive exhibits relating to the state court action in both the Common Pleas Court and the Court of Appeals. In opposition, plaintiffs submit the affidavit of Attorney Harold K. Bell, together with exhibits attached thereto. The record discloses that in the former action the Common Pleas judge wrote an opinion, filed extensive findings of fact and conclusions of law and in addition answered in writing numerous interrogatories propounded by plaintiffs. The Court of Appeals also made findings of fact and submitted conclusions of law but wrote no opinion. As indicated above, the Supreme Court of Ohio overruled plaintiffs' motion to certify the record.

The record on the motion discloses the following evidentiary facts. Early in 1950, at the instance of Balkwill and with the assent of plaintiffs, efforts were made to secure a purchaser for the shares of

stock in the Frog Company. On June 28, 1950 defendant Brooks, an attorney from Chicago, Illinois, submitted a written proposal on behalf of The Mount Carmel Foundation of that city in the form of an offer to purchase all of the shares upon a deferred payment basis. At that time plaintiff Connelly offered to sell the 2,800 shares of the Lucas Estate for $650,000, payable in cash, if the other shareholders would accept deferred payments for their shares. However, the other shareholders except defendant Balkwill also demanded payment in cash, which the Foundation was unable to make. As a result no sale was consummated. On July 14, 1950 Earl Jones, defendant Balkwill's son-in-law, after conferring with Brooks, initiated negotiations with Pettibone-Mulliken, a competitor of the Frog Company, with a view to selling all the shares in the latter company to the former. Negotiations were continued at several meetings between July 14, 1950 and July 17, 1950. Present at these meetings were Jones and Brooks and Seifert and Cummings, officials of Pettibone-Mulliken. On July 17, 1950 Brooks, Seifert and Cummings came to Cleveland and conferred with defendant Balkwill at his home. On that occasion Seifert and Cummings indicated that Pettibone-Mulliken was not interested in purchasing the shareholders' interests because of possible contingent liabilities but expressed a willingness to purchase and lease assets of the Frog Company. A proposal was made that Pettibone-Mulliken purchase the inventory of the Frog Company at its book value of $450,000 payable in cash, buy the machinery and equipment for $400,000, payable $25,000 a year without interest, and lease the Frog Company's building at an annual rental of $75,000, the lessee to bear the cost of maintenance and repairs. While at Balkwill's home Seifert telephoned the Continental Bank of Chicago and arranged to have $25,000 placed in escrow as earnest money at the Union Bank of Commerce, Cleveland, Ohio. It was agreed that Brooks was to arrange to get all of the stock in escrow. An understanding was reached between the parties at the meeting that the discussion relative to the sale of assets to Pettibone-Mulliken was to be kept secret. Meanwhile Brooks had arranged through L. C. Speith, General Counsel for the Frog Company, for a meeting of the shareholders on July 18, 1950 to consider a proposal to buy their stock for cash. Accordingly on July 18, 1950 all of the shareholders and Speith met with Brooks and executed an escrow agreement dated July 20, 1950 which provided for the sale of the shares to Brooks at $232.14 per share payable in cash. The agreement specifically provided that the entire 5,000 shares would be purchased if the amount deposited in escrow amounted to $1,160,700 but if the total amount deposited was $1,033,031 the shares of defendant Balkwill would be returned to him. At the meeting of July 18th no reference was made by defendant Balkwill or Brooks to the discussion of the previous day relative to the sale of assets to Pettibone-Mulliken. Thereafter on July 21st, after all the shares had been deposited in escrow, Brooks, Pettibone-Mulliken and defendant Balkwill entered into a written agreement by the terms of which Balkwill was permitted to withdraw the shares deposited by him in escrow.[1] The agreement further provided for the eventual purchase and cancellation by the Frog Company of plaintiffs' shares which represented 89% of all shares outstanding. The agreement also made provision for the sale and lease of the Frog Company's assets to Pettibone-Mulliken upon the terms discussed at the meeting of July 17, 1950. The terms of the lease were modified later to provide for an annual rental of $55,000 on condition that the lessee bear the cost of maintenance and repairs. The terms of the agreement

---

1. The agreement of July 21, 1950 recited that Brooks "as attorney and agent for George W. Balkwill intends to purchase only 89% of the outstanding shares," etc. However, Common Pleas Court, in answer to an interrogatory, specifically stated that Brooks was not the agent and attorney for Balkwill at the meeting of the shareholders on July 18, 1950.

of July 21, 1950 were fully executed. Plaintiffs received the full sale price for their shares. Defendant Balkwill's shares were returned to him and, as the sole owner of the corporation, he arranged for the eventual purchase and retirement of plaintiffs' shares by the company and caused the corporation to sell and lease its assets on the terms already stated to P. M. Cleveland, Inc., a nominee of Pettibone-Mulliken Corporation. On October 19, 1950 P. M. Cleveland, Inc. amended its charter and adopted the name of The Cleveland Frog & Crossing Company. On the same day the old Cleveland Frog & Crossing Company, by an amendment to its charter, changed its corporate name to the GEN Corporation.

As a result of the above transactions the GEN Corporation is the owner of the building of the old Frog Company upon which there is a mortgage of $400,000 but which is leased at an annual rental of $55,000. In addition GEN Corporation holds a noninterest-bearing note covering the balance due on the purchase price of the inventory which is payable in annual installments of $25,000. The amount of real estate taxes, federal income taxes and interest which GEN Corporation is required to pay annually is not shown.

After a lengthy and vigorously contested trial in the Common Pleas Court the trial judge filed numerous findings of fact and conclusions of law as did the Court of Appeals upon a re-trial of the case in that court. The more significant findings of both courts are recited in abridged form in the following paragraph:

Both state courts found as facts that—Plaintiffs were not induced to enter into said transaction or sign said contract by any representations or statements of defendant Balkwill. Defendant Balkwill did not make any false representations to plaintiffs, or any of them, of any material fact relating to the company's affairs or the value of its property or business. Defendant Balkwill did not make any false representations to plaintiffs, or any of them, of any material

al fact relating to the transaction for the sale of their stock nor did he conceal from plaintiffs, or any of them, any material fact connected with the value of the stock which they were selling. Plaintiffs did not repose any confidence or trust in defendant Balkwill. Plaintiffs, neither jointly nor severally, authorized defendant Balkwill to act for them nor was there any express or implied agreement between plaintiffs and defendant Balkwill to make a joint sale of all of the stock. Plaintiffs relied on Connelly and upon counsel for the company in the transaction. Connelly had been president and general manager of the company for nine years and his knowledge of the company's affairs and the value of the stock was greater than that of defendant Balkwill. Plaintiffs, although offered the opportunity to sell their stock on a term basis at a higher price, rejected such proposal and in lieu thereof demanded and accepted cash in the amount of $232.14 per share for their stock. Plaintiffs as the owners of 89% of the stock were in complete control of the business and affairs of the corporation. Defendant Balkwill's stock was committed to escrow duly endorsed and placed beyond his control in the hands of an independent escrow agent subject only to the terms of the written agreement dated July 20, 1950. Plaintiffs knowingly entered into a written contract for the sale of their stock to an unknown and undisclosed purchaser. The identity of the purchaser of plaintiffs' stock was not a material fact in the transaction and plaintiffs by their own conduct showed that such fact was not material to them. Both courts submitted the following conclusions of law among others: No confidential or fiduciary relationship existed between plaintiffs, or any of them, and defendant Balkwill. Defendant Balkwill was not the agent of plaintiffs, or any of them. No "special circumstances" existed in this case warranting the imposition of any liability on defendant Balkwill. Defendant Balkwill was not guilty of any fraud, actual or constructive, or of any fraudulent misrepresentation or concealment

towards plaintiffs, or any of them, in connection with the transaction involved in this case. As answers to a few of the forty-one interrogatories submitted to him, the trial judge stated that the discussions of July 17, 1950, relative to the Pettibone-Mulliken transaction or any subsequent negotiations or discussions relative thereto, are not material for two reasons: (1) Prior to July 17, 1950 the stockholders other than defendant Balkwill had fixed the price and terms upon which they would sell their stock; (2) that no relationship existed between defendant Balkwill and the other shareholders which required him to make any disclosure of such discussions with Pettibone-Mulliken Corporation. Under Ohio law answers to interrogatories filed with proposed findings are considered part of the judgment. Cleveland Produce Co. v. Dennert, Inc., 104 Ohio St. 149, 135 N.E. 531.

### Res Judicata

A word of explanation by way of preface to the discussion of the above captioned defense is in order. Plaintiffs have conceded that the doctrine of collateral estoppel applies and is effective to preclude the re-litigation of the ultimate facts decided in the previous action. Such concession limits substantially the area of the dispute in the present case. The extent of such limitation is evidenced by plaintiffs' statement that:

> "The gravamen of plaintiffs' present action is the failure of defendants to state material facts necessary in order to make the statements made in connection with the sale of plaintiffs' stock in the Cleveland Frog & Crossing Company, in the light of the circumstances under which they were made, not misleading."

For the purpose of discussing the defense of res judicata the Court will accept the above quoted statement as correctly representing the basis of plaintiffs' claim in this action.

It is a well-established principle that where a valid and final personal judgment is rendered on the merits by a court of competent jurisdiction in favor of the defendant, the plaintiff cannot thereafter maintain an action on the original cause of action. Restatement of Judgments, § 48, p. 191. Defendants claim that this principle has application here. Plaintiffs contend that the case at bar is based upon a different cause of action. Their contention rests upon two grounds: (1) that the state courts held in effect that the law of Ohio imposed no duty on defendant Balkwill to disclose the Pettibone-Mulliken negotiations to the other shareholders; (2) that this action is based upon the more stringent duty of disclosure implicit in Rule X 10b–5 and is an action of which the federal courts have exclusive jurisdiction. It is plaintiffs' position that for the foregoing reasons the doctrine of res judicata is inapplicable.

Section 10(b) of the Securities Exchange Act, § 78j, Title 15, reads in part:

> "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange * * * (b) To use or employ, in connection with the purchase or sale of any security * * * any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

Rule X 10b–5 reads:

> "*Employment of manipulative and deceptive devices by any purchaser of a security.* It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,
>
> "(a) To employ any device, scheme, or artifice to defraud.
>
> "(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in

order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security. (Sec. 10; 48 Stat. 891; 15 U.S.C. 78j)"

Section 78aa, Title 15, vests exclusive jurisdiction in the District Courts of the United States of all actions to enforce any liability created by Section 10(b) or Rule X 10b–5 promulgated thereunder. This does not mean that the state courts were without jurisdiction to hear and determine the issues in the previous action which arose out of the same transaction. Sec. 78bb, Title 15, provides in part:

"The rights and remedies provided by this chapter shall be in addition to any and all other rights and remedies that may exist at law or equity * * *."

■■ Thus, while the courts of the several states have jurisdiction to determine actions based on fraud connected with the purchase or sale of securities, they have no jurisdiction in cases involving violations of Rule X 10b–5 which include the direct or indirect use of interstate facilities, the mails or the facilities of national security exchanges. It does not follow, however, that an action in Federal Court under Rule X 10b–5 is necessarily a different cause of action than an action in the state court based upon the same facts. The use of interstate facilities, the mails or the facilities of national security exchanges is not per se a violation of Rule X 10b–5. Standing alone, the use of such facilities gives rise to no cause of action. The federal cause of action arises upon operative facts that disclose a violation of the provisions of the rule designed to insure fair dealing in connection with the sale and purchase of securities. While there has been no definitive determination of the boundaries of Rule X 10b–5, the better rea-

soned view is that—facts which would sustain a common-law action for fraud might also constitute a cause of action under Rule X 10b–5 but not all cases arising under the rule would constitute a common-law action for fraud. In Beury v. Beury, 127 F.Supp. 786, the District Court expressed the opinion that Section 10 of the Act conferred jurisdiction to entertain only those actions which involve a right of recovery which goes beyond common-law rights. Although the appeal in that case was not from a final order and for that reason was dismissed, the Court of Appeals gratuitously expressed its disagreement with the above view of the trial judge. Beury v. Beury, 4 Cir., 222 F.2d 464, at page 465. In Loss on Security Regulations, at 819, the author says: "The extent to which the Security Exchange Acts go beyond common law fraud depends upon the particular common law jurisdiction." Plaintiffs concur in this view and concede that in some jurisdictions the duty of disclosure under state law is no less strict than the duties imposed by Rule X 10b–5.

To determine whether this case and the previous one are based upon the same cause of action, it is necessary first to ascertain the principles that govern actions of fraud in Ohio. It has long been the rule in Ohio that while, generally speaking, mere silence does not amount to fraud, there are circumstances where it becomes the duty of a person to speak in order that a party with whom he deals may be placed on an equal footing. 24 Ohio Jur.2d 678, Sec. 76. This principle has been applied where a vendor of chattels failed to disclose a material latent defect known to him and not known to the vendee. Hadley v. Clinton County Importing Co., 13 Ohio St. 502. As the court there indicated, the diversity of circumstances in which such a question might arise are infinite. Ibid 509. Where the parties sustain a fiduciary or quasi fiduciary relationship towards each other "the duty to make full disclosure is imperative." Long v. Mulford, 17 Ohio St. 484. See also Berkmeyer v. Kellerman, 32 Ohio St.

239. In Smith v. Patterson, 33 Ohio St. 70, at pages 75–76, the court noted that the principle requiring full disclosure was not confined to those well-known relations of trustee and *cestui que trust,* guardian and ward, and attorney and client. In this connection the court said:

" 'It is not the relation of solicitor and client, or trustee and cestui que trust, which imposes the duty of making a free disclosure of every circumstance of which it is important the individual should be apprised.' The principle applies to every case where influence is acquired and abused, where confidence is reposed and betrayed. The relations with which the court of equity most ordinarily deals are those of trustee and cestui que trust, and such like. It applies specially to those cases, for this reason, and this only, that from those relations the court presumes confidence put and influence exerted. Whereas in all other cases where those relations do not subsist, the confidence and the influence must be proved extrinsically; but where they are proved extrinsically the rules of reason and common sense, and the technical rules of a court of equity, are just as applicable in one case as the other. 1 Story Eq.Jur. § 329a."

Nor does the law of Ohio countenance the speaking of half truths. In Long v. Mulford, supra, the court quoted the following statement with approval:

"Imperfect information given in a way calculated to produce a false impression is the equivalent of concealment. He, says Lord Eldon, who undertakes to give information, gives but half information in the doctrine of this court conceals."

In Manley v. Carl, 20 Ohio Cir.Ct.R. 161, the conduct of a buyer of real estate who informed the seller of facts calculated to depreciate the value of the property but omitted to disclose other facts known to him which would have given correct information as to its value was held to be fraudulent. In Ziliox v. City Valleyview

Apartment & Storage Co., 20 Ohio App. 156, 153 N.E. 183, a disclosure by means of a prospectus that a businessman was a subscriber for 100 shares of stock without revealing that by secret agreement he was required to take only 10 shares also was held to be fraudulent. Hey v. Cummer, 89 Ohio App. 104, 97 N.E.2d 702, 703, was an action to declare the defendant a trustee ex maleficio. In that case the Cuyahoga County Court of Appeals held inter alia that "fraud may be committed by the suppression of the truth by one whose duty requires him to make full disclosure of facts." Beck v. Fishel, 16 Ohio Cir.Ct.R.,N.S., 130, is factually similar in many respects to the case at bar. The syllabus of the case succinctly states the salient facts as follows:

"The president and general manager of a corporation induced all the stockholders to agree to a sale of all the corporation assets at a price which would net them 200 per cent. on their investment; when stating the proposition to them he also stated that he expected to make a good thing for himself over and above what the others made; it afterwards turned out that he received 1450 per cent. for his holdings and a contract on his part not to engage in the business for a term of years. *Held:* That his disclosure was not full enough to protect him in actions thereafter brought by one of the stockholders for an accounting, after discovery of the real price received for the property."

In its opinion the court said, at page 136:

"That the law requires of an officer of a corporation the utmost good faith in dealing with his stockholders is recognized everywhere; he is a trustee for his stockholders, and as such is bound to communicate to them the facts which affect the value of their property, and in case of the sale of the property, the facts known to him which affect the price at which the property is sold. Ordi-

narily the officer of a corporation is bound to account to his stockholders for the avails of any sale made by him, as any other trustee is bound to account to his beneficiary for the avails of sales made by him, and he is excused from paying over to his stockholders each his aliquot part of the avails of the sale, when, after full and fair disclosure, the stockholder consents to the officer retaining part of such avails as compensation to himself. (Citing cases.)"

The judgment in the previous action marks no departure from the legal principles laid down in the Beck case. The distinction between Beck and the previous action in the state courts lies in the difference in the facts of the two cases. In the previous action it was found inter alia that—Balkwill did not induce the sale of the other shareholders' interests—that he did not sustain a relation of trust and confidence to the other shareholders—that the other shareholders relied upon Connelly and Speith—that the other shareholders fixed the price at which they would sell—and that the Pettibone-Mulliken transaction was immaterial. In the previous action it was held in effect that under the facts as there determined Balkwill was under no duty to disclose the Pettibone-Mulliken negotiations. However, such a determination is not tantamount to holding that a director who *induces* the shareholders to sell their interests at a time when he is negotiating the sale of the corporate assets upon terms that will yield a secret profit to himself is under no duty to disclose to the shareholders the material facts affecting the value of their shares. The force of the Beck case is not weakened by the judgment based upon the facts of the previous action.

■ The above review of the Ohio cases illustrates clearly that in this state one who sustains a fiduciary or quasi fiduciary relation towards another with whom he deals is bound to make a full disclosure of material facts known to him and not to the other party which affect the value of the property which is the subject of the transaction. The cases also demonstrate that the law of Ohio imposes a duty to make full disclosure in those circumstances where such disclosure is necessary to dispel misleading impressions that are or might have been created by a partial revelation of the facts.

It will serve to bring plaintiffs' claim into sharper focus by again reciting the provisions of Section (b) of Rule X 10b–5 upon which this action is based.

"(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."

■ The above section of the rule is designed to prevent false and misleading statements. Plaintiffs do not claim that defendants made untrue statements. They rely upon that portion of Section (b) which requires disclosure of material facts necessary to dissipate the misleading implications of statements made. In support of their contention that Rule X 10b–5 expands or enlarges the duty of disclosure beyond the duty defined by the law of Ohio, plaintiffs cite and rely upon expressions of the courts and commentators in Kardon v. National Gypsum Co., D.C., 73 F.Supp. 798; Speed v. Transamerica Corp., D.C., 71 F.Supp. 457; Fry v. Schumaker, D.C., 83 F.Supp. 476, 478; Speed v. Transamerica Corp., D.C., 99 F.Supp. 808, 831; Pennsylvania Company for Insurances, etc. v. Deckert, 3 Cir., 123 F.2d 979; 43 Yale Law Review 242; 59 Yale Law Review 1120 et seq.; 32 Texas Law Review 200–205. The generalities in the foregoing authorities to the effect that Rule X 10b–5 cannot be limited by common-law standards shed no light on the question whether Rule X 10b–5 is more exacting in its requirements of disclosure than the law of Ohio. However, there are suggestions that because section (b) does not in terms refer to fraud it contains no requirement of scienter, 32 Texas Law Review 205, nor any requirement of proof of wrongful in-

tent, Pennsylvania Company for Insurances, etc. v. Deckert, supra. However, if these suggested constructions of section (b) be correct they do no more than import into the rule a principle akin to if not the equivalent of the equitable doctrine of constructive fraud which requires no proof of wrongful intent and which has long been recognized as a ground of recovery in Ohio. See Ohio Jur.2d 621 et seq. Moreover, plaintiffs are in no position to claim the benefit of any construction of Section (b) which eliminates the elements of guilty knowledge and wrongful intent. In their complaint plaintiffs allege that defendants "conspired" to violate Rule X 10b–5. To say that a violation of law conceived in conspiracy was not fraudulently and intentionally committed is to state a contradiction. Section (b) requires that when a person speaks he must speak the whole truth. But that section does not in terms require a person to speak at all except when necessary to dispel the misleading implications of an antecedent partial disclosure. Section (a) of the rule forbids any scheme or artifice to defraud. Section (c) prohibits any act, practice or course of business which operates or would operate as a fraud or deceit. It is undoubtedly true, therefore, that when read as a whole, Rule X 10b–5 imposes the duty to speak and to make a full disclosure of material facts in those circumstances where silence would constitute fraud. Manifestly no such duty arises where the aggrieved buyer or seller of securities relies implicitly upon his own knowledge and business judgment or upon the advice of a third party rather than upon the knowledge and advice of the other party to the transaction. Certainly the more reasonable view would seem to be that the duty to speak which is implicit in Rule X 10b–5 arises in those circumstances where a fiduciary or quasi fiduciary relation exists, where confidence is reposed or influence acquired, where there is a justifiable expectancy of disclosure or reliance upon the superior knowledge of another and in other like circumstances. But it cannot be supposed that the rule imposes a duty to speak in all cases involving the purchase or sale of securities irrespective of the relations of the parties or the circumstances under which the transaction is consummated. Neither the express language of the rule nor its fair implications warrant such a construction. It is not inconsistent with the view that Rule X 10b–5 cannot be limited by common-law standards of deceit to say that the duty to speak which is imposed by the rule derives from those principles of equity which have enlarged the area of recovery for fraudulent conduct beyond the narrow limits and rigid requirements of the old common-law action of deceit.

The same equitable principles have been engrafted on the law of fraud in Ohio. I am unable to perceive wherein Rule X 10b–5 imposes any greater or higher duty to speak where to remain silent would constitute fraud, than the law of Ohio. Nor does it appear that section (b) of the rule imposes any different or more stringent duty to disclose material facts necessary to make the statements made not misleading, than the duty imposed in similar circumstances under Ohio law. Indeed a breach of the duty to disclose material facts necessary to make the statements made not misleading is indistinguishable from concealment as that term is understood in Ohio law. Long v. Mulford, supra.

In prosecuting the action in the state courts plaintiffs urged that the law of Ohio required Balkwill to make full disclosure of the Pettibone-Mulliken transaction. In their brief in the Common Pleas Court plaintiffs argued that "The principal question in this case is whether the defendant Balkwill was required to disclose to his fellow shareholders in The Cleveland Frog & Crossing Company the negotiations which he had on Monday, July 17th, with officials of the Pettibone-Mulliken Corporation."

The same argument was repeated in various forms both in plaintiffs' briefs and in their proposed findings submitted to the Common Pleas Court. In support of their motion to certify the record to

the Supreme Court of Ohio, plaintiffs cited and relied upon Kardon v. National Gypsum, supra, which was decided under Rule X 10b–5 and urged that the portion of the rule which makes unlawful the omission of a material fact necessary to make the statements made not misleading "was no more than a codification of the common law." Plaintiffs now contend that since their argument was rejected and their motion to certify denied by the Supreme Court, "It follows that there is no such common law in Ohio." Plaintiffs misconceive the effect of the Supreme Court's ruling. It is settled in Ohio that the Supreme Court's denial of a motion to certify is no more than an indication that the Court does not consider the controversy one of public or great general interest within the meaning of Sections 2 and 6 of Article IV of the Ohio Constitution. Keesecker v. G. M. Mc-Kelvey Co., 141 Ohio St. 162, 47 N.E.2d 211; 14 Ohio Jur.2d 642–643. In view of the Court of Appeals' determination that the facts of the case did not warrant the application of the Ohio rule that requires full disclosure, it is not surprising that the Supreme Court did not regard the controversy as one of great general interest. It should be noted also that the Court of Appeals wrote no opinion and neither that Court nor the Court of Common Pleas made any determination of law that departed from the settled principles of the law of fraud in Ohio. The judgments of both state courts are responsive to the particular facts of the case which were found to be insufficient to require the application of the rule of full disclosure. As applied to the law of Ohio plaintiffs' argument in the previous case that the portion of Rule X 10b–5 referred to above "was no more than a codification of the common law" is sound. In the light of the foregoing considerations Ohio must be assigned a place among those "more enlightened jurisdictions" where the duty to disclose material facts is as broad and exacting as the duty of disclosure defined by Rule X 10b–5.

It is beyond the competence of this Court to review the judgment of the state court in the previous action. Without indicating any opinion on the correctness of that judgment, it is appropriate to remark that even if the final judgment in that action was erroneous it would nevertheless constitute a bar to the maintenance of this action against defendants Balkwill and GEN Corporation. Restatement of Judgments, § 48, Comment (a), p. 191.

■ For the foregoing reasons it is held that this case is based upon a cause of action no different from the cause of action upon which plaintiffs sought recovery in the previous action and that the final judgment in that action constitutes a bar to the maintenance of this action against defendants Balkwill and GEN Corporation who were defendants in the state court action.

#### Collateral Estoppel

■ Even if this case be considered as based upon a different cause of action against defendants Balkwill and GEN Corporation, I am of the opinion that plaintiffs are barred by the related doctrine of collateral estoppel from maintaining this action.

The doctrine of collateral estoppel, which is a narrowed version of res judicata, is based upon the principle that—

"Where a fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action." Restatement of Judgments, § 68, p. 293.

The distinction between res judicata and collateral estoppel is delineated clearly in United States v. International Building Co., 345 U.S. 502, at pages 504–505, 73 S.Ct. 807, 808, 97 L.Ed. 1182:

"The governing principle is stated in Cromwell v. County of Sac, 94 U.S. 351, 352–353, 24 L.Ed. 195. A judgment is an absolute bar to a subsequent action on the same claim.

" 'But where the second action between the same parties is upon a dif-

ferent claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the findings or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action.' "

As noted above, plaintiffs concede that the doctrine of collateral estoppel is applicable here and is effective to foreclose the relitigation of those ultimate facts determined in the state court action. Plaintiffs contend, however, that the State court's finding that the negotiations for the sale of assets of Pettibone-Mulliken was not a material fact, was in effect a determination that under Ohio law there was no duty upon Balkwill to disclose the prior negotiations. However, the Ohio courts enunciated no rule of law decisive of that issue. Plaintiffs concede that they are precluded from litigating those ultimate facts found in the previous action which were necessary to a determination of that case. Such a concession includes inter alia the findings —that plaintiffs were not induced to sell their shares by any representation or statement of Balkwill—that plaintiffs did not repose any trust or confidence in Balkwill—that plaintiffs did not rely upon any statements made by Balkwill— as well as those findings which exonerated Balkwill of the charges of fraud, misrepresentation, concealment and most, if not all, of the other findings hereinabove set forth. As shown above, the Common Pleas Court held that the discussions relative to the Pettibone-Mulliken transaction were not material. Plaintiffs contend that such finding of immateriality is

a conclusion of law and not a finding of an ultimate fact such as would estop them from relitigating the issue of non-disclosure of the Pettibone-Mulliken transaction. There is support for the view that the doctrine of collateral estoppel operates to preclude the relitigation of ultimate facts rather than questions of law decided in the previous action. See Restatement of Judgments, § 68, supra. The Supreme Court of the United States, however, takes a broader view of the effectiveness of estoppels by judgment. In United States v. International Bldg. Co., supra, collateral estoppel was defined as being applicable "to * * * matters in issue or points controverted, upon which the finding or verdict was rendered." In the later case of Partmar Corp. v. Paramount Pictures Theatres Corp., 347 U.S. 89, 103, 74 S.Ct. 414, 98 L.Ed. 532, which involved the application of the doctrine of collateral estoppel, the court answered an argument similar to that advanced by plaintiffs here as follows:

" 'The contention of the government seems to be that the doctrine of res judicata does not apply to questions of law; and, in a sense, that is true. It does not apply to unmixed questions of law. Where, for example, a court in deciding a case has enunciated a rule of law, the parties in a subsequent action upon a different demand are not estopped from insisting that the law is otherwise, merely because the parties are the same in both cases. But a *fact, question* or *right* distinctly adjudged in the original action cannot be disputed in a subsequent action, even though the determination was reached upon an erroneous view or by an erroneous application of the law.' Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 569, 71 S.Ct. 408, 95 L.Ed. 534; Cf. United States v. Stone & Downer Co., 274 U.S. 225, 230, 47 S.Ct. 616, 71 L.Ed. 1013." 347 U.S. at page 103, Footnote 9, 74 S.Ct. at page 422.

The question whether the Pettibone-Mulliken negotiations was material was an issue in the state litigation. Admittedly the state courts had jurisdiction to determine that question. Whether it was there determined incorrectly upon an erroneous application of the law is not a matter of inquiry here. Under the reasoning of Partmar, plaintiffs are estopped from again raising the issue of the materiality of the Pettibone-Mulliken negotiations as against defendants Balkwill and GEN Corporation.

 The question whether plaintiffs are barred under either of the above doctrines from maintaining the action against defendants Brooks and Pettibone-Mulliken turns in large part upon the determination whether the rule of mutuality of estoppel applies. As a general rule the doctrine of res judicata affects only the rights of those who were parties to the judgment or in privity with a party thereto. 30 Am.Jur. 441, § 393. The rule of mutuality, however, is not absolute. Ibid. In an ever increasing number of cases involving a great variety of factual situations it has been held that a prior judgment may operate as a bar against a person who was a party in the former action to prevent his relitigating the same issues with a person who was not a party to the action in which the judgment was rendered. Cohen v. Superior Oil Corp., D.C., 16 F. Supp. 221; Bruszewski v. United States, 3 Cir., 181 F.2d 419; Laffoon v. Waterman S.S. Corp., D.C., 111 F.Supp. 923. In Coca-Cola Co. v. Pepsi-Cola Co., 1934, 6 W.W.Harr., Del., 124, 172 A. 260, 263, the court said:

"* * * assuming the identity of the issues, we are of the opinion that a plaintiff who deliberately selects his forum and there unsuccessfully presents his proofs, is bound by such adverse judgment in a second suit involving all the identical issues already decided. The requirement of mutuality must yield to public policy. To hold otherwise would be to allow repeated litigation of identical questions, expressly adjudicated, and to allow a litigant having lost on a question of fact to re-open and re-try all the old issues each time he can obtain a new adversary not in privity with his former one."

See also: Adriaanse v. United States, 2 Cir., 184 F.2d 968; United States v. Willard Tablet Co., 7 Cir., 141 F.2d 141, 152 A.L.R. 1194; Caterpillar Tractor Co. v. International Harvester Co., 3 Cir., 120 F.2d 82; Brailas v. United States, D.C., 79 F.Supp. 963.

The defendants Brooks and Pettibone-Mulliken were not parties in the previous action although Seifert and Cummings, officers of Pettibone-Mulliken, as well as Brooks testified in that action and were referred to in plaintiffs' argument as conspirators with Balkwill. That plaintiffs are not persuaded that the rule of mutuality should be applied here is indicated by the following statement in their main brief:

"Although not convinced that defendants Brooks and Pettibone-Mulliken are also entitled to whatever benefits may accrue to defendant Balkwill on application of res judicata or collateral estoppel, plaintiffs claim no special rights against these defendants merely because they were not parties in the previous Balkwill litigation. Plaintiffs make no claim under the doctrine of mutuality of estoppel."

Plaintiffs assert that their cause of action is based upon the respective roles of Brooks and Pettibone-Mulliken in the conspiracy. The charge of conspiracy, however, is not a cause of action. The gist of the civil action for conspiracy is the act or acts committed in the furtherance of the unlawful combination. 11 Am.Jur. 577, § 45. As was said in De Boboula v. Goss, 90 U.S.App.D.C. 28, 193 F.2d 35, 36:

"A cause of action ' "is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiffs." ' Ewald v. Lane, 70 App.D.C. 89, 90, 104 F.2d 222, 223."

In their complaint plaintiffs allege that in furtherance of the alleged conspiracy Balkwill, Brooks and Pettibone-Mulliken concealed from plaintiffs the identity of Pettibone-Mulliken—concealed from plaintiffs the negotiations with Pettibone-Mulliken—failed to disclose the terms of said negotiations and that an agreement of sale and lease was imminent or had been concluded. They allege other acts of fraudulent representation, concealment and non-disclosure and in summary aver —"*that in reliance upon the statements and conduct aforesaid of Balkwill* and believing said statements to be true plaintiffs were influenced and induced to * * * and did enter into" the agreement of July 20, 1950." (Emphasis supplied.) It is apparent that plaintiffs in this action are attempting to relitigate the same issues that were decided adversely to them in the previous action against Balkwill. The state courts found "The statements and conduct aforesaid of Balkwill" did not constitute false representation or concealment—that the identity of Pettibone-Mulliken and the negotiations with that company were not material facts—that Balkwill did not induce plaintiffs to enter into the contract of July 20, 1950 and that Balkwill was not guilty of any fraud, actual or constructive. By these and the many other findings hereinabove set forth the state courts exonerated Balkwill from liability in connection with the transaction in question. Plaintiffs are barred from relitigating the issues against Balkwill and no good reason appears to justify permitting them to again litigate the same issues against defendants Brooks and Pettibone-Mulliken. As was said in Bernhard v. Bank of America National Trust and Savings Ass'n, 1942, 19 Cal.2d 807, 122 P.2d 892, 895:

"No satisfactory rationalization has been advanced for the requirement of mutuality. Just why a party who was not bound by a previous action should be precluded from asserting it as res judicata against a party who was bound by it is difficult to comprehend."

I hold that plaintiffs are estopped and barred from maintaining this action against defendants Brooks and Pettibone-Mulliken as well as against defendant Balkwill.

### Statute of Limitations

Although the Securities Exchange Act fixes periods of limitation within which civil actions for violations of certain sections of the Act must be commenced, the Act specifies no period of limitation for actions brought under Section 10(b) nor is there any general federal statute of limitations applicable to the case at bar. In all such cases the Federal courts adopt and apply the local state law of limitation. Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743. State statutes of limitations have been applied in other actions arising under Section 10(b) of the Securities Exchange Act of 1934. Northern Trust Co. v. Essaness Theaters Corp., D.C., 103 F.Supp. 954; Osborne v. Mallory, D.C., 86 F.Supp. 869; Fischman v. Raytheon Mfg. Co., 2 Cir., 188 F.2d 783. The question here presented is whether Section 2305.07 Rev.Code of Ohio governs as to the period of limitation or whether Section 2305.09 applies. The former section is applicable in actions based upon a liability created by statute. Section 2305.09 applies where the relief sought is on the ground of fraud. Plaintiffs' action in the state court was filed in November 1950 and it was specifically alleged therein that the fraud was discovered in October 1950. This action was filed April 8, 1955, which, of course, is more than four but less than six years after the cause of action accrued.

A liability created by statute is a liability which would not exist but for the statute. Hawkins v. Iron Val. Furnace Co., 40 Ohio St. 507; Hocking Valley R. Co. v. New York Coal Co., 6 Cir., 217 F. 727; Thomas v. Pick Hotels Co., 10 Cir., 224 F.2d 664. However, the incorporation of a common-law right of action into

a statute or rule promulgated thereunder does not create a liability that would not exist except for the statute. See Hartford Accident & Indemnity Co. v. Proctor & Gamble, 91 Ohio App. 573, 109 N.E.2d 287. The present action is based upon the same alleged facts, the same transactions and the same principles of law that governed in the previous action in the state court. The adverse judgment against plaintiffs in the previous action was not based upon a determination that the law of Ohio afforded no relief under the facts as alleged but was attributable solely to plaintiffs' failure to prove the facts alleged by them. As shown by the docket entry of the Court of Appeals, judgment was entered for defendants in the previous case because there was "insufficient evidence in the record to sustain the allegations of fraud in plaintiffs' petition." The relief sought in the previous action was relief on the ground of fraud. The relief sought here is based upon the same ground. The precise question presented here arose in Fratt v. Robinson, 9 Cir., 1956, 203 F.2d 627, 37 A.L.R.2d 636, where it was held that the applicable limitation was that provided for actions based upon fraud rather than the limitation applicable to actions based upon a liability created by statute. Tobacco & Allied Stores, Inc. v. Transamerica Corp., D.C.1956, 143 F.Supp. 323, is to the same effect. In Errion v. Connell, 236 F.2d 447, the Ninth Circuit followed its decision in Fratt v. Robinson, supra, and held that the limitation applicable to the action there brought under Rule X 10b–5 was that provided for actions based upon fraud. No case has been cited or found which applies a different rule in cases involving actions under Rule X 10b–5. It is held, therefore, that Section 2305.09 Rev.Code of Ohio applies and bars plaintiffs from maintaining this action.

The pleadings, affidavits, exhibits and admissions in the record show there is no genuine issue as to a material fact. Therefore, and for the reasons hereinabove stated, defendants' motion for summary judgment is granted.