Kenneth **LEFFERTS** et al., Plaintiffs,

v.

Howard **SILVERSTEIN**, Defendant.

No. 75 C 578.

United States District Court,
E. D. New York.

June 27, 1975.

Hauser & Rosenbaum, P. C., Brooklyn, N. Y., for plaintiffs.

Speno, Goldberg, Moore, Margules & Corcoran, Mineola, N. Y., for defendant.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Plaintiffs seek a preliminary injunction pursuant to 28 U.S.C. § 2283 restraining defendant from prosecuting a counterclaim for breach of employment contract in an action commenced by the plaintiffs in the Supreme Court, Nassau County, for common law fraud on the ground that the action here involves some of the same facts and alleges violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Securities Act") and Rule 10–b–5 promulgated thereunder and this Court has exclusive jurisdiction thereof.

Plaintiffs' complaint in the State Court which was dismissed at the end of their case sought (i) a declaration that they need not continue to honor the contract whereby defendant was employed for a five year period at a salary of $16,000 per annum, (ii) a rescission of their purchase of defendant's beauty supply business and cancellation of the balance of the $100,000 promissory notes due to him, and (iii) damages of $100,000 allegedly sustained because of the defendant's "fraud".

In 1971 defendant owned and operated a beauty supply business under the name of Metro Beauty Supply Co., Inc. ("Metro"). At that time plaintiffs Lefferts and Weisenberg were associated with the plaintiff L. S. Amster & Co., Inc. ("Amster"), a corporation which was engaged in the drug business and opened negotiations with defendant for the purchase of his business. These negotia-

tions resulted in two contracts, one dated March 27, 1972 between Metro and the plaintiffs Silverstein, Lefferts and Weisenberg by which the former would sell to the latter "all assets of Metro (with the exception of accounts receivable, an automobile currently used by Silverstein owned by Metro), including but not limited to good will, its lease on premises occupied by it" and certain specified tangible assets and the parties agreed to comply with the New York State Bulk Sales Law.

It was further agreed that (i) Metro and the defendant would execute bills of sale conveying the assets covered by the agreement, (ii) defendant would execute a non-competitive agreement, and (iii) the price for the assets would be $25,000 "plus Metro's inventory at the time of title closing at the lower or cost of market" with the parties to take a physical count of the inventory and evaluate it not more than 24 hours prior to title closing.

At the time of title closing the parties apparently agreed that the total price of $100,000 was based upon inventory valued at $80,000, lease valued at $20,000 and furniture and fixtures valued at $5,000.

At the same time, defendant and Amster executed a second contract in which it was provided that after the payment of all creditors of Metro and the assignment of any remaining assets to the defendant, he would then assign and deliver all of the capital stock of Metro to Amster, Lefferts and Weisenberg.

Between the execution of the aforesaid agreements and the closing, the plaintiffs formed a new corporation, Metro Beauty & Barber Supply Co., Inc., and Messrs. Lefferts and Weisenberg assigned to it their contract with Metro so that all of Metro's assets were transferred to such new corporation.

After defendant had spent some six months educating the plaintiffs in the business under his employment contract, the plaintiffs terminated the same claiming that he had misrepresented the gross annual business done by Metro in the fiscal year ending October 31, 1971.

The sole question for this Court to determine is whether the further trial of the action commenced by the plaintiffs in the Nassau County Supreme Court (namely the trial of defendant's counterclaim therein) must be restrained on the ground that such issues must first be determined in the action under the Securities Act instituted by the plaintiffs here after their complaint based on common law fraud in the State Court had been dismissed at the end of their case.

Plaintiffs' theory appears to be that "Rule 10–b–5 requires a higher standard of disclosure and honesty" than the common law standard of fraud and hence (i) the Nassau County Supreme Court decision is not binding on this Court under the doctrine of res judicata, collateral estoppel, election of remedies, or otherwise and (ii) this Court should first decide all of the issues on a trial under the Securities Act.

At least one Federal court has taken exception to plaintiffs' premise and has held that the Securities Act does not require a higher standard than the common law standard of fraud under the law of Ohio (*Connelly v. Balkwill*, 174 F.Supp. 49 (N.D.Ohio, E.D.1959), aff'd 279 F.2d 685 (6th Cir. 1960)). There the Court said (at pp. 56 and 59):

> " . . . In Loss on Security Regulations, at 819, the author says: 'The extent to which the Security Exchange Acts go beyond common law fraud depends upon the particular common law jurisdiction.' . . .
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> "The same equitable principles have been engrafted on the law of fraud in Ohio. I am unable to perceive wherein Rule X 10b–5 imposes any greater or higher duty to speak where to remain silent would constitute fraud, than the law of Ohio. Nor does it appear that section (b) of the rule imposes any different or more stringent

duty to disclose material facts necessary to make the statements made not misleading, than the duty imposed in similar circumstances under Ohio law. Indeed a breach of the duty to disclose material facts necessary to make the statements made not misleading is indistinguishable from concealment as that term is understood in Ohio law. Long v. Mulford, [17 Ohio St. 484] supra."

It is questionable whether the law in New York is any less stringent in security matters than the law in Ohio or that prescribed by the Securities Act. *See*, e. g., New York General Business Law, McKinney's Consol. Laws, c. 20, §§ 339–a and 352–c.

In addition, as defendant argues, there is a substantial question in this case whether the Securities Act has any applicability to the particular transaction involved here since it was essentially a sale of assets and not a sale of stock, the latter involving only a separate sale of a corporate shell to different parties.

In any event, regardless of all of the foregoing, the narrow question presented to this Court would seem to be controlled by the case of *Vernitron v. Benjamin*, 440 F.2d 105 (2d Cir. 1971), *cert. den.* 402 U.S. 987, 91 S.Ct. 1664, 29 L. Ed.2d 154 (1971).

In the *Vernitron* case, Mr. Benjamin had made a contract with Vernitron for the sale of all of the assets of his wholly-owned corporation in exchange for $1,300,000 worth of Vernitron common stock. The contract provided that Mr. Benjamin could demand the registration of such shares on certain dates which Mr. Benjamin did and Vernitron failed or refused to comply. Accordingly, Mr. Benjamin commenced an action against Vernitron in the State Court alleging breach of contract and Vernitron counterclaimed alleging breaches of eight warranties and demanding rescission for failure of consideration.

Mr. Benjamin moved for summary judgment in the State Court and obtained a decision for partial summary judgment and denying Vernitron's cross motion for a stay of the State Court's suit. In the meanwhile, Vernitron commenced an action in the Federal District Court for the Southern District of New York alleging the same facts as were contained in its counterclaim in the State Court, plus alleged violations of Sections 10(b) and 29(b) of the Securities Exchange Act of 1934 and common law fraud.

Before judgment could be entered on the decision of the State Court, the District Court for the Southern District granted Vernitron's motion for a preliminary injunction, staying Benjamin and its attorneys "during the pendency of this action from taking any steps or proceedings in the prosecution of the lawsuit" in the State Court on the ground that a stay of the State Court action fell within an exception to the anti-injunction statute, 28 U.S.C. § 2283, as "necessary in aid" of the federal court's exclusive jurisdiction over matters arising under the Securities Exchange Act of 1934, as provided in Section 27. In reversing the decision of the District Court, the Second Circuit Court of Appeals held as follows in language appropriate to the case at bar (440 F.2d at page 108):

"We disagree with this ultimate conclusion. There can be no question but that the doctrine of collateral estoppel would be applied in any instance where the state court had determined a factual issue arising in a subsequent federal litigation. Restatement of Judgments, Chap. 3, § 68 (1) (1942); e. g. Connelly v. Balkwill, 174 F.Supp. 49 (N.D.Ohio 1959). But, to justify an injunction of a state court action, '[i]t is not sufficient to show that the matter properly before a state court embraces issues within the compass of the federal suit, even if the federal court has exclusive jurisdiction over its case.' Greater Continental Corporation v. Schechter, 304 F.Supp. 325, 330 (S.D.N.Y.1969), ap-

peal dismissed 422 F.2d 1100 (2 Cir. 1970); accord, Lyons v. Westinghouse, 201 F.2d 510 (2 Cir. 1953). There is no reason why the state court cannot or should not determine issues of fact and state law relevant thereto as they come up in the state litigation. The subsequent effect of collateral estoppel, far from requiring the federal court to stay proceedings in the state court, is a result which should be welcomed to avoid the task of reconsidering issues which have already been settled by another competent tribunal. Klein v. Walston Co., 432 F.2d 936 (2 Cir. 1970); see, generally, Restatement of Judgments, Chap. 3, § 70 (1942).

"The policy of the anti-injunction statute, 28 U.S.C. § 2283, is to prohibit enjoining of state court suits except in those situations where the real or potential conflict threatens the very authority of the federal court. The only conceivable interference here would be an attempt by the state court to determine issues of federal law, a task which it certainly has not as yet undertaken and which in any event would be wholly without effect.

"As to the other exceptions to Section 2283, there is no contention that an injunction is 'necessary * * * to protect or effectuate' a judgment of a court of the United States. Vernitron, however, argues that an injunction is warranted by a third exception, 'as expressly authorized by Act of Congress.' Specifically, it relies on Section 21(e) of the Securities Exchange Act (15 U.S.C. § 78u) authorizing the SEC to obtain an injunction against persons 'engaged or about to engage' in acts in violation of the Securities Exchange Act. The plain wording of that statute would seem to foreclose Vernitron's contention. Moreover, Studebaker Corporation v. Gittlin, 360 F.2d 692 (2 Cir. 1966), relied upon by Vernitron is inapposite in that the prosecution of the state action there relevant would itself have furthered the violation of the Securities Exchange Act.

"Finally, Vernitron should not be permitted to use the exceptions to Section 2283 as a means of avoiding an adverse state decision and in effect obtaining appellate review thereof in a federal district court. See, e. g., Atlantic CoastLine Railroad Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed. 2d 234 (1970)."

For the foregoing reasons plaintiffs' motion for a preliminary injunction must be denied in all respects.

So ordered.