**HARRIS HUB BED & SPRING CO.**

v.

**UNITED ELECTRICAL, RADIO & MACHINE WORKERS OF AMERICA (U.E.) et al.**

**Civ. A. No. 4814.**

United States District Court
M. D. Pennsylvania.
May 11, 1954.

James E. O'Brien, Vance L. Eckersley, Scranton, Pa., for plaintiff.

Edward M. Murphy, Scranton, Pa., David Cohen, Philadelphia, Pa., for defendants.

WATSON, Chief Judge.

The plaintiff, a manufacturing corporation, brought this action under Section 301 of the Labor Management Relations Act 1947, 29 U.S.C.A. § 185, commonly called the Taft-Hartley Act, against the defendant labor unions for damages for breach of contract. The breach alleged was a strike of the plaintiff's employees called by the defendants in violation of a collective bargaining agreement between the parties. The agreement contained an arbitration clause and the defendants moved for a stay of the suit pending arbitration, pursuant to Section 3 of Title 9, United States Code, entitled "Arbitration".[1]

The plaintiff filed an answer in opposition to the defendants' motion for stay pending arbitration. Briefs were duly filed by all parties to the litigation, and the matter is now before the Court for disposition.

■ The first question presented is whether Section 3 of Title 9 is applicable to a collective bargaining agreement between parties in the situation of those in this action. The answer to this question in turn depends upon the interpretation of the final clause of Section 1 of Title 9 which reads "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." "Contracts of employment" to which this clause refers include collective bargaining agreements, and the clause is a limitation upon the operation of all sections of Title 9.[2] The answer to the question accordingly turns upon whether the plaintiff's employees are to be regarded as a "class of workers engaged in foreign or interstate commerce" within the meaning of the exclusionary clause.

■ The problem, therefore, is to ascertain the meaning which Congress intended to give to the phrase "workers engaged in foreign or interstate commerce". The question here was squarely presented and decided by the Circuit Court of Appeals for the Third Circuit in Tenney Engineering, Inc., v. United Electrical Radio & Machine Workers of America, (U.E.), Local 437, 3 Cir., 1953,

1. "§ 3. Stay of proceedings where issue therein referable to arbitration

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay

is not in default in proceeding with such arbitration."

2. International Union United Furniture Workers v. Colonial Hardwood Flooring Co., 4 Cir., 1948, 168 F.2d 33; Amalgamated Ass'n, etc., v. Pennsylvania Greyhound Lines, 3 Cir., 1951, 192 F.2d 310; Pennsylvania Greyhound Lines v. Amalgamated Ass'n, 3 Cir., 1952, 193 F.2d 327; Tenney Engineering, Inc., v. United Electrical Radio & Machine Workers of America, (U.E.) Local 437, 3 Cir., 1953, 207 F.2d 450.

**42**

207 F.2d 450, 452, where that Court, speaking through Judge Maris, said:

"We think that the intent of the latter language was, under the rule of *ejusdem generis*, to include only those other classes of workers who are likewise engaged directly in commerce, that is, only those other classes of workers who are actually engaged in the movement of interstate or foreign commerce or in work so closely related thereto as to be in practical effect part of it. The draftsmen had in mind the two groups of transportation workers as to which special arbitration legislation already existed and they rounded out the exclusionary clause by excluding all other similar classes of workers."

█ In this case the plaintiff's employees are engaged in the production of goods for subsequent sale in interstate commerce. Thus while their activities will undoubtedly affect interstate commerce they are not acting directly in the channels of commerce itself. They are, therefore, not a "class of workers engaged in foreign or interstate commerce" within the meaning of Section 1 of Title 9.

The collective bargaining agreement here involved, not being excluded by Section 1, is within the purview of Section 3 of Title 9. The defendants are, therefore, entitled to a stay of proceedings under Section 3 of Title 9, United States Code, if the defendants are not in default in proceeding with such arbitration and if the collective bargaining agreement between the parties provides for arbitration of the issues raised by the complaint.

The next question is whether the defendants are in default in proceeding with arbitration. The complaint did not allege that defendants were in default in proceeding with the arbitration. Defendants, in support of their application for a stay, filed an affidavit of Joseph Crugnale, President of the defendant, Local 122, United Electrical, Radio and Machine Workers of America (U.E)., stating that "plaintiff has not agreed to submit the issues to arbitration as is required by Article XI of said contract", and the motion for stay alleged that the defendants are ready and willing to submit said alleged breach of contract and the issues arising therefrom to arbitration. These statements were not controverted.

█ Delay in moving for an arbitration order will not alone amount to a default within the proviso. Almacenes Fernandez, S. A., v. Golodetz, 2 Cir., 1945, 148 F.2d 625, 161 A.L.R. 1420. Consequently, the Court concludes that the defendants were not in default in proceeding with such arbitration.

The final question presented is whether the collective bargaining agreement between the parties provides for arbitration of the issues raised by the complaint. The contract sued on relates to wages, hours and conditions of employment and provides the terms under which the parties shall proceed during the two years covered by the agreement. Article XI of the contract is entitled "Grievance and Arbitration Procedure" and consists of eight sections. Section A thereof provides that the company shall recognize stewards in the various departments for the purpose of settling grievances. Section B provides that the company will recognize a shop committee to consist of not more than five member employees whose functions will be to adjust grievances. Section D provides that a duly authorized representative of the Union, upon request by the Union, shall be admitted to the office of the company during working hours for the purpose of assisting in the adjustment of grievances. Section E, consisting of subsections numbered from (1) to (4), provides a step by step procedure for the settlement of claims, differences, disputes, or grievances:

"E. Grievance Steps. Any claim, difference, dispute, or grievance shall be taken up as follows:

"(1) Between the aggrieved employee with or without his steward and his immediate foreman.

"(2) Between the department steward on the one hand and the department foreman on the other. The aggrieved employee may, upon request to the Union be present. If no satisfactory settlement is reached within 24 hours, the matter shall be put in writing by the Union and referred to—.

"(3) The Shop Committee and the Personnel Director. If no satisfactory settlement is reached between them within 48 hours, the matter shall be referred to—.

"(4) The International Representatives of the Union and the Shop Committee on the one hand, and the Employer's representatives on the other. If no satisfactory settlement is reached, then the difference, dispute or grievance shall at the request of either party be submitted to arbitration as hereinafter provided."

Section G provides that any claim, difference, dispute or grievance that is not settled through the grievance procedure shall, at the request of either party, be submitted to arbitration and Article XIII provides that during the life of the agreement there shall be no strikes, stoppages or slowing down of production by the Union, or any employee in the bargaining unit, and there shall be no lockout on the part of the Company.

It is clear that the arbitration clause embedded in Article XI has relation to the controversies which are made the subject of the grievance procedure of that article, and not to claims for damages on account of strikes and lockouts, which are matters entirely foreign thereto. Damages arising from strikes and lockouts could not be held subject to arbitration under a procedure which expressly prohibits strikes and lockouts and provides for the settlement of grievances in order that such may be avoided. The quoted language above shows clearly that arbitration was to be but a fifth step in the grievance procedure, and as such the subject matter to which it is applicable is no broader than that to which the first four steps applied. The dispute as to whether the union was justified in calling the strike is one certainly not capable of resolution at a conference between an employee with or without his steward and a department foreman; or between the department steward and the department foreman. It is, therefore, not the kind of dispute which was intended by the parties to the agreement or contract to be resolved by submission to arbitration.

In International Union United Furniture Workers v. Colonial Hardwood Flooring Co., 4 Cir., 1948, 168 F.2d 33 and Markel Electric Products, Inc., v. United Electrical, Radio & Machine Workers of America, U.E. 2 Cir., 1953, 202 F.2d 435, a question similar to the one in the instant case existed and the conclusion as to arbitration was the same as the Court has reached here.

Defendants' motion for a stay of the suit pending arbitration will be denied and an appropriate order will be filed herewith.